## THE LEHIGH COAL AND NAVIGATION COMPANY

*v.*

## THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. The preference given by the sixty-third section of the corporation act is in derogation of the right of creditors to be paid equally, and must not be extended by construction.

2. The right conferred by this section is personal, inhering alone in the person who actually performs labor or service.

3. A person who furnishes the labor or services of others, under a contract to do the whole business of a corporation, or a particular branch of it, is not an employe, but a contractor.

---

*Mr. Ashbel Green,* for petitioner.

*Mr. R. W. De Forest,* for receiver.

On the 22d of March, 1877, the chancellor made an order in this cause, directing the receiver, out of the surplus earnings of the defendants' works, after paying the current operating expenses, to pay the wages due and owing to the employes, workmen and laborers prior to February 15th, 1877, the payments to be made *pro rata,* and at such times and in such installments as the state of the surplus in his hands would warrant. John H. Starin now comes in by petition, and asserts that he has a claim which should be paid under this order, or, if its terms are not broad enough to embrace his claim, an order should be made that his claim shall be paid *pari passu* with the labor claims. His claim arises under a contract consisting of thirteen pages of manuscript, divided into twenty-eight paragraphs, which may be stated sufficiently for the purposes of this case by saying that he agreed with the defendant corporation, for certain prices per ton, to receive all westward-bound freights which were delivered at their station in New York, and also to collect, at the stores and warehouses of consignors, all

freights intended to be sent over the defendants' road, and transfer the same, by his own teams or drays, over the defendants' ferry to their Jersey City freight station, and there load into cars and way-bill the same; he also agreed to receive all eastward-bound freights delivered at the Jersey City station, and transfer the same, by his own teams and drays, over the defendants' ferry to the New York station, and from there make delivery to the consignees, collect the charges thereon, and make daily payments of the charges collected to the defendants' treasurer. Certain kinds of bulky freights, which it is not necessary to particularize, were excepted from the operation of the contract. The petitioner expressly assumed the liability of a common carrier. It is admitted, at the time the defendants' works were taken possession of by the court, the defendants were indebted to the petitioner, under the contract, in the sum of $16,109.33. The receiver refused to recognize this claim as payable under the order of March 22d, 1877, and thereupon the petitioner sought the special direction of the court in the premises.

. THE VICE-CHANCELLOR.

The petitioner puts his right to the relief he asks upon the sixty-third section of the act concerning corporations, which declares: " In case of the insolvency of any corporation, the laborers in the employ thereof shall have a lien upon the assets thereof for the amount of wages due to them respectively, which shall be paid prior to any other debt or debts of said company; and the word 'laborers' shall be construed to include all persons doing labor or service of whatever character, for or as workmen or employes in the regular employ of such corporations." (*Rev.* p. 188.) That part of the section which is remedial was first enacted as the forty-second section of the act authorizing the creation of corporations for manufacturing and other purposes. *Nix. Dig.* (3d ed.) 497. The declaratory part was added in 1869 (*P. L.* 1869, p. 1448), and its principal design seems to have

been to extend to " officers in the regular employ of a corporation" the benefit given by the original provision to laborers alone.   The revision put the section in its present form.   The purpose of the original enactment, I think, cannot be mistaken.   In my view it was two-fold : First, to prevent those persons whose labor was indispensable to the continuance of the business of the corporation from abandoning it, and thus suspending its operations, whenever they became alarmed by a fear of losing their wages; and, second, to give protection to a class of persons who generally work for small compensation, to whom the product of their daily labor is the sole means of support, and who are unable to protect themselves against the misfortune or fraud of their employers.   The word "laborers," both lexically and in common parlance, describes with precision a well-known class of persons.   Under the original act little difficulty would have been found in deciding who came within its terms and who did not.   It has been held that a civil engineer is a servant ( *Conant* v. *Van Schaick*, 24 *Barb.* 87); but a consulting engineer is not a laborer or operative (*Erricson* v. *Brown*, 38 *Barb.* 390); nor is the secretary of a corporation a laborer or servant ( *Coffin* v. *Reynolds*, 37 *N. Y.* 640); nor is a contractor who agrees to furnish the labor of others a laborer (*Balch* v. *N. Y. and Oswego Midland R. R. Co.*, 46 *N. Y.* 521); nor is a person who contracts to build a railroad a laborer or servant (*Aikin* v. *Wasson*, 24 *N. Y.* 482); but a person who renders professional services as counsel is an employe (*Gurney* v. *Atlantic and Great Western Railw. Co.*, 58 *N. Y.* 358).   In the last case it is said the word "employe" is more comprehensive than "laborer," and is the correlative of "employer," and that neither term has, either technically or in general use, a restricted meaning by which any particular service is indicated ; and it is also said the words "employe" and "employer" are as applicable to attorney and client, or physician and patient, as to master and servant, a farmer and day-laborer, or a master mechanic and his workmen.   For the purposes of the present discussion,

I think it may be granted the legislature intended the word "laborers" should be read as meaning "employes." Read in this sense, the question presented for solution is, Are any wages due to the petitioner for which he may claim a lien or priority of payment? The considerations against a latitudinarian, or even liberal construction, are decisive. The preference given is in derogation of the common right of equality. The statute confers a special or exceptional right; it makes a distinction among persons having, according to the principles of natural justice, equal rights, and takes from all classes of creditors, secured and unsecured, except one, that that particular class may be paid in full. When a statute produces such a result, those who claim under it have a right to take what is clearly given by plain words, but nothing more. Looking at the manifest purpose of this statute, as well as at its words, I think it is quite obvious that the right conferred is strictly personal, inhering alone in the person who actually performs the labor or service, and that he who furnishes the labor or service of others, under a contract to do the whole business of a corporation, or a particular branch of it, is neither within its words nor its spirit. In neither the strict nor the popular sense of the word is he an employe, but his relation to the corporation would be more aptly described by the word contractor.

In *Balch.* v. *N. Y. and Oswego R. R. Co., supra,* it is said, "the term laborer cannot be construed as designating one who contracts for and furnishes the labor and services of others, or one who contracts for and furnishes one or more teams for work, whether with or without his own services, or the services of others, to take charge of the teams while engaged in the service;" and Chief Justice Church, in *Gurney* v. *Atlantic and Great Western Railway, supra,* says, a contractor is in no proper sense a servant, but in many respects an independent party. In popular understanding an employe is constantly subject to the direction of the employer; the employer has a right to require his employe to do anything within the scope of his employment, at such

time and in such mode as he deems proper; but here the contract is the guide and master of both; neither party controls the other, but both are subject to the commands uttered by the contract. No reason of justice or policy can be suggested for making a preferential distinction between a debt contracted for labor and one contracted for borrowed money; neither stands higher than the other in intrinsic merit, but a distinction founded upon a wise public policy may be made between creditors.

It requires no argument to show that it is a matter of the first importance, not only to the public but to creditors, that a railroad should be kept in operation though its credit is so far impaired as to render it certain it cannot pay all its creditors in full. Even a temporary interruption or suspension of its business would be attended with the most disastrous consequences. As already stated, the preference given by this statute was intended as a guard against such a contingency. It does not rest on the nature of the debt, but grows out of the character of the creditor and the necessity of retaining him in the service of the corporation. I think it is very plain the legislature did not intend to give a lien or preference for wages due for vicarious labor or service, or to confer upon one person the power to depute or delegate to himself the labor of many others, so that he can be an employe of a corporation to the extent of one hundred or one thousand men daily. Such a purpose would have been expressed by giving preference to the debt, as that all debts due for labor or service should be a lien, and not to the creditor, as it now stands, that the employes in the employ of a corporation shall have a lien upon its assets for the wages due to them respectively. Besides, the contract of the petitioner appears to me to be a most extraordinary and unusual one. It devolved upon him all the duties and liabilities of a great public work in the receipt, loading and unloading and delivery of freight at a point where more freight was received and discharged, and a greater operating force was necessary than at any other on

the road. In the construction of statutes of this kind, it must be presumed the law-making power acted with full knowledge of the ordinary and usual modes of managing and operating railroads, but no such presumption can be made respecting exceptional and unusual methods. I think it would be a perversion of this law to hold that the protection granted by it to laborers and employes for their wages should be extended to the claim of the petitioner. In my opinion he is not an employe, nor is his a claim for wages in the sense in which those terms are used in the act. The application must be denied and the petition dismissed, with costs.