BOESSNECK <i>et al. v.</i> COHN.

(<i>Supreme Court, Special Term, New York County.</i>   October 18, 1889.)

**1. FRAUD—PRESUMPTION—CHATTEL MORTGAGES.**
   In the absence of circumstances showing bad faith, the assignment of $50,000 of personalty to secure $18,000 of debts does not raise a presumption of fraud.
**2. TRUSTS—ASSIGNMENT TO SECURE DEBTS.**
   An assignment of personalty to a creditor as security, and a subsequent assignment to other creditors of the surplus that may arise, do not make the first assignee a trustee for the other creditors; nor does the transaction create a trust.
**3. ASSIGNMENT FOR BENEFIT OF CREDITORS—WHAT CONSTITUTES.**
   An assignment of personalty by a debtor to one of his creditors, and a subsequent assignment of any surplus that may arise to other creditors, do not constitute a general assignment within the general assignment act of 1877, (Laws N. Y. 1877, c. 466,) and are not void under Laws N. Y. 1887, c. 503, amending said act, and providing that "in all general assignments preference created therein shall not be valid except to the amount of one-third in value of the assigned estate."

At chambers. Motions to vacate attachments.

<i>Blumenstiel & Hirsch,</i> for plaintiffs.   <i>Townsend, Dyett & Einstein,</i> for defendant.

O'BRIEN, J. These motions to vacate, made upon the papers upon which the attachments were granted, being in all five cases, substantially alike, may be considered together. The debtor transferred all his property, on September 4th, to the Importers' & Traders' National Bank, to secure the payment of his indebtedness to them, with a reservation of the surplus to himself. This indebtedness was about $18,000 and the property transferred is variously stated at from $50,000 to $150,000, the former estimate, however, being nearer the correct estimate. The instrument by which the transfer was made to the bank is as follows: "Whereas, I, Meyer Cohn, am indebted to the Importers' and Traders' National Bank of the city of New York, in the sum of $18,-370.08, and whereas, I have heretofore assigned to said bank certain choses in action to secure payment of my indebtedness to it, including the amount above specified, and the said bank has realized thereupon sufficient to reduce my said indebtedness to the sum above specified, and still holds some of the said choses in action as security as aforesaid, now, for the purpose of further securing payment of the said indebtedness, I hereby assign to the said bank all the goods, wares, and merchandise, manufactured and unmanufactured,

in the store occupied by me, No. 334 Canal street, New York city, and in the premises occupied by me at Nos. 13 and 15 Lispenard street, New York city, and I hereby authorize the said bank to sell all the said goods, wares, and merchandise hereby assigned, at public or private sale, for the best price it can obtain therefor, and out of the proceeds of said sale it deduct the lawful expense thereof, and to retain and pay to itself the amount of my indebtedness to it, with such interest as it may be entitled to, or so much thereof as may not be realized by it from the choses in action aforesaid heretofore assigned to it, rendering the overplus, if any, to me or to my assigns." This document was executed on September 4th. Under and by virtue of this instrument it appears the bank took possession of the entire stock thus transferred. The affidavit further shows that the attorney for the debtor stated that the said debtor had in addition to the instrument of transfer to the bank on the same day made various other transfers of the surplus or assets that might arise after paying the Importers' & Traders' Bank to four other creditors, including the wife of the defendant. These facts are alone necessary to be considered, for it is evident that the balance of Mr. Blumenstiel's affidavit, which is made up of legal assumptions and conclusions, can add no weight to the facts themselves, which must be considered in determining the question.

By the affidavits it is made to appear that on the day in question the debtor discontinued business, and by these various transfers disposed of his property. The question is, was this transaction valid as against his creditors? It may be assumed that when a debtor determines to discontinue business, and yield control of his estate, it is immaterial into how many parts the transaction may be divided. All transfers made in pursuance of a common intent will be construed together, and treated as one transaction. Applying this rule here, it is claimed the attachments can be supported on several grounds. These grounds relied upon to uphold the attachments may be separately considered.

*First.* That the delivery of the property, largely in excess of the debt due the bank, creates a strong inference of fraud. There is little force in this argument, unless we are prepared to hold, with reference to personal property, that a substantial excess between the property transferred and the amount of the debt to be secured, in the absence of circumstances showing bad faith, are sufficient to raise a presumption of fraud.. All are familiar with the general rule that prevails in commercial life with reference to personal property when given as security, to exact an amount greatly in excess of the debt to be secured; and, in the absence of bad faith, the courts will hesitate to hold that $50,000 of personal property, which upon a sale forced or otherwise may net a much less sum, when given to secure an indebtedness of $18,000 raises a presumption of fraud.

*Second.* The next ground relied upon is that the transfer to the bank, and the subsequent assignment, to particular creditors, of the surplus, considered as one transaction, is in conflict with the statute relating to personal trusts. In disposing of this there are certain general principles so well settled that they may be stated without referring to authorities. A debtor, whether solvent or insolvent, may transfer a portion of his property to a creditor in payment of or as security for a *bona fide* debt. He may pay one or more creditors in money, and he may transfer property of a fair and reasonable amount to such creditors. A debtor may mortgage a portion or the whole of his property to secure a *bona fide* debt. It may be also regarded as settled law what is is stated as *dicta* in *Knapp* v. *McGowan*, 96 N. Y. 75, "that a conveyance by a debtor, whether solvent or insolvent, of all his property to trustees to pay a portion of his creditors, with a provision that the surplus shall be returned to him, leaving his other creditors unprovided for, is fraudulent and void as to the latter. A debtor, whether solvent or insolvent, may, acting in good

faith, mortgage a portion or the whole of his property to secure existing claims against him, and also future loans and advances." The first question to be determined is whether the instrument to the bank, when received by itself, or in connection with the subsequent assignments of the surplus to other creditors, was to be regarded as a mortgage or as creating a trust. There can be no doubt that the instrument to the bank, alone considered, was a mortgage. The fact that subsequently, though on the same day, the debtor, without any privity or agreement with the bank, assigned to other creditors his interest in the surplus, does not, in my opinion, make the bank a trustee for such other creditors, nor does the entire transaction, considered as a whole, create a trust. The words of the opinion in *Brown* v. *Guthrie*, 110 N. Y. 441, 18 N. E. Rep. 254, are here applicable: "In form it was an absolute sale upon a chattel mortgage given for a fixed and agreed consideration, and while, nevertheless, such a sale, in spite of its form, may be proved to be an assignment in trust, (*Britton* v. *Lorenz*, 45 N. Y. 51,) yet, in the present case, we are unable to discover any such proof." Again, on page 442, 18 N. E. Rep. 255: "He held no part of the property in trust for the debtor, but solely as mortgagee entitled to its proceeds till his debt was paid, and then bound to restore any surplus realized to the mortgagor or those claiming under him. Such provision never hinders creditors, for they may pay the mortgage and take the property, or fasten upon the surplus. Such was not only the form of the transaction, but also the actual fact.". See also, *Leitch* v. *Hollister*, 4 N. Y. 211, and *Dunham* v. *Whitehead*, 21 N. Y. 131.

*Third.* It is asserted that the transaction constituted a general assignment of all the debtor's property, with preferences to four or five creditors, in violation of the statute restricting preferences to one-third in amount of the assets. There are two answers to this: (1) That the act does not make a general assignment void for excessive preferences, but would only invalidate the preferences to the extent of the excess of assets, (Laws 1887, c. 503;) and (2) there are no elements adequate in disregard of the form of the instruments to turn them into a general assignment of an insolvent debtor. As stated in *Wheel Co.* v. *Fielding*, 101 N. Y. 504, 5 N. E. Rep. 431, the general assignment act of 1877, (chapter 466, Laws 1877,) does not include or apply to a specific assignment of a debtor for the benefit of one or a portion of his creditors. The reasoning of that case is not affected by the amendment subsequently made to the general assignment act.

In concluding it may be noted that the validity of the claims of the bank and the other creditors is not assailed, nor have we any definite information as to the exact form of the assignment of the surplus given by the debtor to the creditors subsequent to the bank. Upon all the facts, therefore, there being no assertion of fraud in fact, and the entire transaction not creating a trust in contravention of the statute, the affidavits upon which the attachments were granted are, in my opinion, insufficient, and for that reason the attachments themselves should be vacated, with costs. But in view, however, of the novelty and doubt connected with the questions involved, and the fact that a contrary opinion was reached by one of my learned associates, all proceedings after the entry of the order upon this motion should be stayed until the hearing and determination of an appeal therefrom, provided the same is taken within 10 days, and prosecuted with reasonable diligence.