Keyes.
2k119
154  701

MORRIS S. VAN BUSKIRK and others, Respondents, *v.* JOSEPH
M. WARREN and CHARLES W. TILLINGHAST, Appellants.

MORRIS S. VAN BUSKIRK, EDWARD P. PICKETT, JASON C.
OSGOOD, GEORGE T. BLAIR, DARWIN ADAMS, EDWARD
OGDEN, FRANCIS A. FALES, ISAAC N. HAIGHT, JAMES L.
HATCH, A. H. WOOD, B. B. WOODBURY and HORATIO B.
SISSON *v.* HANNIBAL GREEN.

An assignment made directly to certain creditors for the purpose of secur-
ing their particular demands, is not an assignment in trust, and is not
void under the provisions of section 1, 2 R. S., 135.

Where an assignment is made directly to a party having a beneficial
interest therein, *prima facie* the assignee accepts the title; and the *onus*
is upon the party claiming in hostility to show that there never was an
acceptance.

An assignment unaccompanied by instantaneous delivery, is not *necessarily*
*void* under the provisions of section 5, 2 R. S., 136. It is, as against credit-
ors of the assignor, or subsequent purchasers in good faith, *presumptively*
fraudulent, and the burden of proof to overcome this presumption is
upon the assignee.

A resident of this State executed to divers creditors, also, with one excep-
tion, residents of this State, an assignment in good faith, and to secure
the claims of those creditors of certain property owned by him, a part
of which consisted of iron safes, then in the assignor's store in Chicago,
Illinois. Three days subsequent to this assignment, and without knowl-
edge or notice of it, and before the assignees had taken possession of
the safes, certain other creditors of the assignor, also residents of this
State, by a process of attachment, duly issued pursuant to the laws of
the State of Illinois, attached and levied upon said safes, and, upon sub-
sequent notice of the assignment and demand for the safes by the
assignees, the same was refused. The action under which the attach-
ment was made was prosecuted to judgment, and the safes sold under
an execution duly issued.

In an action by the assignees against the judgment creditors for whose
benefit the safes were sold, to recover the value of the same, it was
*held*, that by the assignment the title to the safes vested instantaneously
in the assignees; that by the laws of this State their title was superior
to that acquired *subsequently* under the attachment; that in an action in
this State, between citizens of this State, in regard to a contract made
in this State conveying the title to personal property, it must be deter-
mined by the law of this State; and that, *hence*, the assignees in such
action against such judgment-creditors were entitled to recover.

THESE actions were brought respectively to recover damages for the taking and carrying away certain iron safes, claimed to have been the property of the plaintiff, at Chicago, in the State of Illinois. The facts, as admitted on the trial and found by the judge who tried the action, are as follows:

On the 2d day of November, 1857, John W. Bates was the owner of forty-one iron safes, which were then in Chicago, in Cook county, in the State of Illinois. Said safes never were, in reality, the property of one Lorenzo Stowell.

Said Bates, and the several parties to this action, except said Woodbury, who resides in Ohio, then were, and still are, residents and citizens of the State of New York.

The defendants had previously, during that year, sold to said Bates iron, which was used in the manufacture of safes, for which he was indebted to the defendants in the first above action in the sum of $1,777.39, on the 5th day of November, 1857, and in the second action for the sum of $1,220.81.

On the 5th day of November, 1857, the defendants, by their attorneys at Chicago, by process of attachment duly issued on that day, in pursuance of the laws of Illinois, out of the Court of Common Pleas of Cook county, Illinois, in an action in said court having jurisdiction to issue said process, and brought by said defendants against said Bates, upon said debt, duly attached and levied upon said safes in the said city of Chicago, as the property of said Bates, and such proceedings were afterward had in said action, and in furtherance of said attachment, and in said court, that, on the 9th day of June, 1858, said defendant recovered judgment against said Bates, by default, for $1,826.77 damages and costs, and afterward duly sold said safes under and to satisfy an execution duly issued out of said court upon said judgment, and said proceedings were regular.

On the 3d day of November, 1857, said Bates executed and delivered at the city of Troy, in the State of New York, to the plaintiffs, a written instrument, of which a copy is hereto annexed.

The facts recited in said instrument down to the words "now in consideration of" are true, except the date thereof

is not the day of its execution, and said attached safes are a part of the property included therein.

The said plaintiffs proceeded without delay to take possession under said instrument of the property included therein, but were prevented from taking possession of said attached safes, by said attachment having been levied thereon previously to any demand made by plaintiffs at Chicago, or elsewhere, of said safes. They took possession of the residue of said property, but not before said attachment.

At the time said safes were attached, neither said defendant nor his attorneys had any knowledge or information whatever of said instrument, or of any transfer of said safes to said plaintiffs, or by said Bates. Soon after the attachment was levied, and before any further proceedings were had in the action against Bates, the plaintiffs herein were notified of the attachment and levy under it, and the defendant herein was notified of said instrument, and that plaintiffs thereby claimed said safes.

Both before the recovery of said judgment, and after the sale under execution, the plaintiffs herein demanded of the defendant herein the attached safes, and the same were refused. The facts above admitted may be severally introduced by either party on the trial of this action.

The cases of *Martyn* v. *Dryden et al.* (1 Gilm.), and *Burnell et al.* v. *Robertson* (5 id.), contain an exposition of the law of the State of Illinois, and said cases and the statutes of Illinois may be read on the trial from the printed volumes as establishing the fact that the law of Illinois is in accordance therewith.

The written instrument, called an assignment, is in the words following:

"This instrument, made this second day of November, 1857, between John W. Bates, of the village of Lansingburgh, N. Y., of the first part, and Morris I. Van Buskirk and Edward P. Pickett (composing the firm of Van Buskirk & Pickett), of Lansingburgh, Jason C. Osgood, George T. Blair, D. Adams, Edward Ogden, Francis A. Fales and

Isaac N. Haight, each of Troy, J. L. Hatch of New York, A. H. Wood, of Watertown, N. Y., and B. B. Woodbury, of Ohio, and H. B. Sisson, of Bristol, in Ontario county, N. Y., of the second part, witnesseth as follows:

"Whereas, said Bates, in course of his business of manufacturing iron safes under the name of the World's Safe Company, has a great number of said safes in various places which yet remain unsold, and there are due or to become due to said Bates divers sums of money from sales of safes manufactured as aforesaid; and whereas, also, said Bates is indebted to the said several parties of the second part hereto as follows: (Here follows a statement of Bates' indebtedness to the several parties of the second part.)

"Now, in consideration of the said several items of indebtedness, and for securing the payment of the same, and protecting the said several parties of the second part against any loss on account thereof, the said Bates does hereby sell, assign and set over to the said parties of the second part, all and every of the said safes which are now owned by the said Bates, except those within the State of New York; and also all the said sums due or to become due, as aforesaid, from sales of safes and the accounts therefor, and the evidences thereof, except such notes and securities as have come to the hands of said Bates, or of Lewis Lillie, and except accounts and negotiable paper for safes sold by the agents within the State of New York for selling said safes; and the said Bates does hereby authorize the said parties of the second part to take possession and control of the said safes hereby sold to them, and to sell the same at the usual prices at which such safes have been sold by said Bates, or at such reasonable prices as either said Bates or said Edward P. Pickett shall, in writing, approve. And also to collect the said sums of money and accounts and evidences of debt, hereby transferred to the said parties of the second part, and after paying the reasonable costs and expenses of such sales and collections, from time to time, to apply the residue of the proceeds derived therefrom in payment of the aforesaid debts of the said Bates, pro rata, according to the respective amounts

thereof, until, if such residue shall suffice therefor, the said debts shall be fully paid.

"And whereas, a pretended sale has been lately made by Lewis Lillie to Lorenzo Stowell, of certain safes belonging to said Bates, and said sale was made without the knowledge or assent of said Bates, and is deemed by said Bates to have been *mala fide*, it is intended hereby that the safes so sold to said Stowell, and all the interest of said Bates therein, shall be deemed a part of the property hereby sold and assigned to the said parties of the second part; and nothing herein is intended to ratify or adopt any sales of safes which (sales) have been made by said Lewis Lillie, or any other agent of said Bates, except actual and *bona fide* sales thereof."

The judge, at the trial, also further found the fact, that the value of the safes taken at the time of the levy, was the sum of $7,102.65, which sum, with interest added from November 5, 1857, to date of judgment, is to be apportioned as damages between these defendants and Hannibal Green (who, under the same circumstances and at the same time with these defendants, in the first above action, levied an attachment on said safes), in proportion to their respective judgments, that is to say, judgment against defendant Green, $1,168.30; ditto of Warren and Tillinghast, $1,826.77.

Also the fact that, at the time of the execution by Bates, of the instrument dated November 2, 1857, said safes were in possession of Lorenzo Stowell, under claim of ownership by him.

Also, the fact that the instrument dated November 2, 1857, was made and executed in good faith, and without any intent to defraud the said defendant or any other person.

As conclusions of law from the facts so found, the court held:

1. That the instrument in writing from John W. Bates to said plaintiffs, was not fraudulent in law or void, but that the same was and is in all respects a legal and valid instrument, and an absolute transfer of the property to the plaintiffs, subject to their liability to account for any surplus which there might be over and above the payment of their debts.

2. That the assignment or sale or transfer, of said safes from Bates to said plaintiffs, was not fraudulent in fact or in law, but valid and operative.

3. That by the law of the State of New York, the title to the safes passed on the execution and delivery of the instrument under the facts found in the case, and overreached the subsequent attachment in the State of Illinois, and actual prior possession under it at the suit of the defendant, although he was a creditor, having a valid and fair debt against Bates, and had no notice of the previous assignment or sale.

4. That the law of the State of New York is to govern the transaction and not the law of the State of Illinois where the property was situated.

5. And that the plaintiffs are therefore entitled to recover against the defendants, the market value of said safes at the time of attachment levied, that is to say, the retail price less five per cent with freight added, together with interest upon such value.

And the said defendants within the time required by statute, made and filed their exceptions to such decision and finding of said court, and to said judgment as follows :

1. The defendants except to the finding of the facts that the value of said safes is as found by said court, and insist that such finding is against the evidence and such damages excessive.

2. The defendants further except to each and every of the conclusions of law so found by said court.

3. The defendants except to the said decision and judgment of the court, on the ground, that the same are contrary to law; that said assignment or instrument mentioned in said stipulation is upon its face and in law fraudulent and void; that it conveyed no title to the plaintiffs as against the defendants' title under their attachments actually levied; that the rule of damages adopted by the court is erroneous ; that the rights of the parties must be determined by the law of the State of Illinois and not by the law of the State of New York, and therefore the plaintiffs cannot recover, it being admitted as a fact that, by the laws of Illinois, under

the circumstances of this case, the title of the attaching creditor is superior. That the plaintiffs have shown no ownership or right of possession of these goods superior to or equal to that of the defendants. And, that the defendants committed no trespass or damage to the plaintiffs in attaching and carrying away the property or refusing to deliver it to plaintiffs.

On appeal to the General Term of the third district, these judgments were affirmed, and an appeal was taken to this court.

*D. L. Seymour* and *A. J. Parker*, for the appellants.

*John B. Gale*, for the respondents.

POTTER, J. The first question to be considered in these cases is, whether the sale of the iron safes by Bates to the plaintiffs on the 2d of November, 1857, was a valid sale. It is urged that the sale was by a voluntary written assignment in trust to pay creditors, and that such assignment is void upon its face, by virtue of the provisions of our statute. (2 R. S., 135, § 1.) There is no express trust created in the instrument in question, nor is it a general assignment in trust for the benefit of the creditors of the assignor. I am unable to distinguish this instrument, in effect, from that in the case of *Leitch* v. *Hollister* (4 Comst., 211.) It is an assignment to creditors *themselves*, for the purpose of securing their particular demands. Neither the statute nor the principle contended for applies to such a case. If, after the payment of the particular demands it was intended to secure, there should remain over a surplus, such surplus can be reached by any other creditor, by creditor's bill, by attachment, and, perhaps, in some cases, by redemption. The conveyance is, in effect, a mortgage. If there was any trust whatever, it was not direct but incidental. It does not appear, from the face of the instrument, that a trust was the object of it; and, if the instrument had provided, in terms, that the surplus should be returned to the assignor, it would have been but the expression of what the law itself implies, and it would

not, for that reason, have been void under the provisions of the statute referred to. Instead of showing a design on its face to withdraw his property from his creditors, it was the direct application of it to that object; and a preference among creditors for this purpose, even when the assignor is insolvent, is not fraud *per se.* The several modern cases in this court, of *Curtis* v. *Leavitt* (15 N. Y., 9); *Leavitt* v. *Blatchford* (17 id., 521); *Dunham* v. *Whitehead* (21 id., 131), have clearly settled the law upon this point against the defendants. Nor, can this court hold the assignment to be fraudulent in fact. The finding of the judge at the circuit upon this point not being reversed by the General Term, is conclusive. If we are right in these views, much of the argument upon the character of the instrument and the intent of the assignor in *law* and in fact is disposed of.

It is also insisted that if the assignment be not void on its face, still, that the title to the property did not pass to the assignees before the levy by the defendants' attachments, three days after the assignment, as there was no evidence of the plaintiff's acceptance of the assignment before the attachments were levied. Whatever may be the common law rule in this respect, in regard to voluntary assignments in trust, where the assignee has no beneficial interest, it is not the rule where the assignment is directly *to* a party having a direct beneficial interest in the acceptance of the assignment. In such case, *prima facie,* the assignee accepts the title (*Townsend* v. *Tiehle,* 3 Barn. & Ald., 31); and the onus is upon the party claiming in hostility, to show that there never was an acceptance. (*Nicholl* v. *Mumford,* 4 Johns. Ch., 528; *Moir* v. *Brown,* 14 Barb., 45.) There is no provision in the statute in relation to fraudulent contracts (2 R. S., 136, § 5) that makes instantaneous delivery an indispensable element to a valid sale, that would make void a sale of goods and chattels, or prevent the title thereto from passing to the vendee, even if unaccompanied by immediate possession. As against the creditors of the party making the assignment, or subsequent purchasers in good faith, it is *presumptively* fraudulent. It throws a suspicion upon the transaction,

which casts the burden of proof upon the assignee to over-
come. If he does overcome this presumption, if he satisfies a
jury or a court, of fairness and of good faith; if he makes it
appear that the sale was made without any intent to defraud
such creditors or purchasers; he shows a valid sale, and the
title will have passed thereby. The finding of the court set-
tles this question of good faith. The plaintiffs overcame this
legal presumption to the satisfaction of the court below, and
we are not at liberty here to question that finding. When
this title passed to the plaintiffs, according to the statutes of
this State, the defendants were not creditors within the
meaning and intent of this statute. They were merely
creditors at large; they did not bring themselves within the
class of persons who had a right to attack the assignment.
It being thus a valid assignment in fact, and it being already
shown that upon its face it is not obnoxious to the charge of
creating a trust for the benefit of the assignor, or of delaying,
hindering or defrauding the creditors of the assignor, we pro-
ceed to examine the next point in the case, which I regard
as the most important one to be decided.

The defendants, and all the plaintiffs in this action (but
one, who resided in Ohio) were residents of the State of New
York at the time of the date of the conveyance by Bates to
the plaintiffs, of the safes in question. The contract of
assignment was made at Troy, in the State of New York.
The said safes were in Bates' store in Chicago, in the State
of Illinois, at the time of the assignment. Bates, at the time
of the assignment, was indebted to the defendants in a *bona
fide* demand, for iron which he had used in the manufacture
of his said safes. Three days after the date of said assign-
ment the defendants obtained attachments in pursuance of
the laws of the State of Illinois, out of a court of compe-
tent jurisdiction, and attached the said safes as the property
of said Bates, and regularly proceeded to judgment, by virtue
of which they sold the said safes. All these proceedings
were regular by the laws of Illinois. The plaintiffs had not,
at the date of the levy, taken actual possession of the said
safes under the said assignment, but were proceeding in good

faith and with reasonable diligence to do so, and were prevented by the defendants' attachments.

The question then presented is this: It is claimed by the plaintiffs that, by the law of the State of New York, the plaintiffs have shown the older and better title to the property in question; and by the defendants that, by the law of the State of Illinois, the defendants had secured the prior and better title. Assuming, as I think we must, the law in these two States to be as is claimed, and, there being this conflict of law, the case must be determined by deciding which law controls, that of Illinois or that of New York.

In the view I have taken of this case, it does not raise the question of comity between States, nor does the question come in conflict with that provision of the Constitution of the United States (art. 3, § 4), which requires that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. Nor will it come in conflict, as is claimed, with the act of congress of the 26th May, 1790, which declares that the judgments of State courts shall have the same faith and credit in other States as they have in the State where they were rendered. The judgment record from the court in Illinois in favor of the defendants was not offered in evidence in this action, nor could it have been evidence between the parties to this action if it had been, as the plaintiffs in this action were not parties or privies to that judgment, so as to be bound by it. The proceedings, however, in the action in Illinois, between the defendants and Bates, the perfecting of a judgment there in defendants' favor, and its regularity and validity in that State, were admitted on the trial.

It is undisputed, that, at the time of the conveyance of the safes and other property by Bates to the plaintiff on the 2d of November, 1857, that all the plaintiff's assignees, except Woodbury, and Bates the assignor, and the defendants, were residents of the State of New York, and that the conveyance to the plaintiffs was executed here. It will not be disputed, that it is the settled law in this court, that as a general rule,

a voluntary conveyance upon a good and valid consideration, made by a party according to the law of his domicile, will pass his personal estate whatever may be its locality—abroad as well as at home. (*Hoyt* v. *Thompson*, 1 Seld., 352; *Parsons* v. *Lyman*, 20 N. Y., 112; Story on Conflict of Laws, §§ 379, 380, 383, 411.) That the control of the owner of personal property has no respect to locality. He can dispose of it wherever it may be; that the law of the owner's domicile determines the validity of every such transfer, alienation or disposition made by the owner. (*Cases, supra.*) "This principle," says DENIO, J., in *Parsons* v. *Lyman* (*supra*), " no doubt has its foundation in international comity, but it is equally obligatory as a rule of decision in the courts as a legal rule of purely domestic origin."

If I am right in this view of the law, then, in an action in this State, between citizens of this State, in regard to a contract made in this State conveying the title to personal property, it must be determined by the law of New York. By our laws, when on the 2d of November, 1857, Bates executed the written assignment, he divested himself at that instant of all title thereto. This title did not remain in abeyance; at the same instant, as a necessary consequence, it vested in the plaintiffs; it was then their property. The defendants, who, three days afterward took that property, took property the title of which was in the plaintiffs, unless, by some exception to this general rule which we have laid down, the case is brought within such exception.

It is urged with great force, that in no case can an action be maintained for a *tort* committed in a foreign country, unless by the laws of the country in which the act was done, an action could have been there maintained, and that in this case, an act which would be adjudged *lawful* in Illinois is asked to be adjudged here as a wrong, and the case of *Whitford* v. *The Panama R. R. Co.* (23 N. Y., 465) and others are cited to sustain these propositions.

The propositions are broader in scope and more extensive in their bearings than the authorities cited will sustain. The case of *Whitford* v. *The Panama R. R. Co.* raised the

question, not as to a question of the common law, of general application in all civilized nations or States, but simply whether a statute of the State of New York, which created a new cause of action, not before recognized by the common law of this State, not shown to be recognized as the common law of the country where the act complained of was committed, and not known to the statute law of the latter country, had application to an injury committed in such foreign country, if the action was brought in this State. That was a personal action of *tort*, the right to which, by the common law, died with the death of the person injured. That is not this case. Nor are all actions of *tort*, so called, in the old distinctions known in the character of actions, subject to the same universal rules in regard to the right to prosecute them in another country, or in regard to the abatement of the cause of action by death of the party injured. Common law remedies for the wrongful taking of personal property, and actions for wrong done to personal property, do not abate by the death of the party, at common law, as did the cause of action of *Whitford* v. *The Panama R. R. Co.*, and as do the actions of slander, assault and battery, and breach of promise to marry, and the like. Injuries called torts, that affect the personal estate, on the contrary, are not only assignable, but actions to recover for them do not abate, and remedies to recover for injuries done to it are regulated by universal common law; and where the common law of the State or country in which the injury was committed, differs from the law of the State, of the domicile of the parties to the action, in the State where the action is pending, the law of the latter State will control.

We have not deemed it our duty to discuss, as a question in this case, what would have been the effect of the judgment obtained by the defendants against Bates, the plaintiff's assignor, had the plaintiff been a party thereto. It is sufficient to say, that the right given to the plaintiffs by the statutes of Illinois to appear in that action, and defend their rights there, does not estop them here. The case must be decided here upon the strict technical rule of law, as between

two *bona fide* meritorious creditors of Bates, each pursuing their claim with diligence, and each relying upon the strict letter and spirit of the law for their advantage. We cannot see, that because, in certain classifications of actions, it may be called an action of tort, that the law of domicile is changed; nor that, because by the law of Illinois, the *tort* could be justified there, it differs from the defense of any action arising upon contract, which could also be justified by the law of the State of Illinois, but not by the law of this State. It does not appear that the *punishment*, as it is called, or the consequence following the result of a recovery by the plaintiff in the one State, differs from that of the other. If the act of the defendants, who are residents here, was *illegal* here, should they escape the consequences of their illegal action because they have chosen to transfer the trial to another State? The proposition has morally, as well as legally, two sides; and comity on the part of the State of Illinois should allow the law of the State of New York to prevail, even in case the plaintiffs had gone there to claim title to the property.

If we are correct in these views, the judgment should be affirmed.

All concur.

Judgment affirmed.