# 530 OTTMAN & CO. v. COOPER.

WILLIAM OTTMAN & Co. and Others, Appellants, v. MARVELLE W. COOPER and Others, Respondents.

*Action to vacate chattel mortgages to trustees, as fraudulent as to creditors.*

An action was brought by judgment creditors to set aside, as fraudulent and void as against creditors, three chattel mortgages given by their judgment debtor to certain of the defendants in such action subsequent to the time when such judgment debtor incurred his indebtedness to the plaintiffs. One of the mortgages in question was given to trustees to secure the indebtedness of the mortgagor to a third person therein named, and by it the trustees were authorized to take possession of a hotel leased by the mortgagor from the person in said mortgage named, to whom he was indebted, to conduct the same, and out of the proceeds pay the expenses of management, and from the income pay off the indebtedness of the mortgagor to such person, and, after the payment of such indebtedness and expenses and a reasonable compensation to the trustees, to return the remainder to the mortgagor. At the time of the execution of such mortgage the mortgagor owned other property.

The trial court found that such trust mortgage was executed in good faith, without any intent to defraud creditors, and for the purpose of securing the creditor named thereon; that at the time of its execution, the mortgagor was sick and unable to attend to his business, and that the person whose claim against the mortgagor was secured by such mortgage was not present when it was executed, nor did he know, prior to its execution, that the mortgagor contemplated making the same. The trustees, as mortgagees, immediately after the execution of such mortgage took possession of the hotel property and managed it.

*Held,* that such mortgage was not fraudulent either in fact or in law. (VAN BRUNT, P. J., dissenting.)

That the trustees, having acted in good faith and without any intent to hinder, delay or defraud the mortgagor's creditors, were entitled to be protected.

APPEAL by the plaintiffs, William Ottman & Co. and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 26th day of October, 1893, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the plaintiffs' complaint upon the merits.

This action was brought by three judgment creditors of James C. Matthews to set aside, as fraudulent and void as against creditors, three chattel mortgages executed October 14, 1891, one by the defendant Matthews to one Albert P. Sturtevant individually, another, to him as surviving partner of A. P. & J. D. Sturtevant,

and third, a trust chattel mortgage executed by Matthews at the same date to Marvelle W. Cooper and William Waddell, as trustees.

March 10, 1886, A. P. & J. D. Sturtevant leased the premises known as Sturtevant House to James C. Matthews for a term beginning October 1, 1886, and ending May 1, 1892, with a covenant that the lease should be renewed until the 1st day of May, 1895, at the annual rent of $54,000, and the lessee entered into occupation of the demised premises under the lease.

July 1, 1888, John D. Sturtevant, one of the firm of A. P. & J. D. Sturtevant, died leaving Albert P. Sturtevant the sole surviving partner. On the 14th of October, 1891, James C. Matthews was indebted to Albert P. Sturtevant, as surviving partner, on fourteen promissory notes given by Matthews and payable to the order of A. P. & J. D. Sturtevant, amounting to $41,871.97, to secure the payment of which said Matthews mortgaged to said Albert P. Sturtevant "all the goods, chattels, property, effects of every name or nature of the party of the first part, now in or upon the premises known as the Sturtevant House, situate upon Broadway between 28th and 29th streets in the city of New York, consisting of all furniture, beds, washstands, bureaus, chairs, carpets, cooking utensils, bar fixtures, tables, crockery, silver and plated ware, mattresses, pillows, bed linen, table linen and all other property more particularly mentioned and described in the schedule hereto annexed which is made a part hereof."

On the same date said Matthews was indebted to Albert P. Sturtevant individually on four promissory notes, amounting to $22,700, and Sturtevant was also liable as an accommodation indorser for said Matthews on two promissory notes, amounting to $13,000, which were then under discount. On the same date said Matthews, to secure the payment of said notes to said Sturtevant, and also to secure him against his liability as an indorser, mortgaged to said Sturtevant the property described in the first mortgage. On the same date said Matthews executed a chattel mortgage to Marvelle W. Cooper and William Waddell, as trustees, in which it was recited that he was indebted to Albert P. Sturtevant, individually, and as a surviving partner, in the sum of about $60,000, to secure the payment of which this trust was created. This mortgage embraced the mortgagor's leasehold interest, accounts, claims of every nature,

promissory notes, checks, choses in action, bonds, mortgages, stocks, securities, wines, liquors, mineral water, owned by and in the possession of the mortgagor, and also the chattels described in the first two mortgages. The trustees in this mortgage were authorized to take possession of the hotel and run it, and out of the proceeds pay the expenses of management; and from the net income to pay off and discharge the indebtedness of the mortgagor to Albert P. Sturtevant; and, after the payment of such indebtedness and expenses, and a reasonable compensation to the trustees, to return the remainder to the mortgagor. The first two mortgages were duly filed in the office of the register of the county of New York on the 15th of October, 1891, but whether the mortgage of the trustees was filed, does not appear.

The court found the foregoing facts, and also that the two mortgages were executed by Matthews and received by Sturtevant in good faith for the purpose of securing just debts due from the mortgagor to the mortgagee. It was also found that at the date of the execution of the trust agreement Matthews was sick and unable to attend to his business, and that the trust mortgage was executed in good faith, without any intent to defraud creditors, and for the purpose of further securing said Sturtevant, as stated in the trust mortgage. It was also found that the three mortgages were all executed and delivered on the same date, but it was found that Sturtevant was not present when the trust agreement was executed, and that there was no evidence that he knew prior to the execution thereof that Matthews contemplated making it. Immediately after the execution of these mortgages the trustees took possession of the Sturtevant House and managed it; Matthews, on the next day, going into the country for his health, where he remained until about November 10, 1891.

On the eleventh of November Matthews demanded that the trustees should surrender the hotel and the mortgaged property, and on the thirteenth of that month he brought an action against the trustees and Sturtevant to reform the three mortgages by inserting in Sturtevant's mortgages that they were to be payable in one year instead of on demand, and by inserting a clause in the trust agreement that the property and business were to be turned over to the mortgagor on demand. In that action the plaintiffs in this were made parties defendant, and also one other creditor. It was tried

and resulted in a judgment dismissing the complaint on the merits, with costs. On the 11th of November, 1891, the plaintiffs in this action recovered three several judgments against James C. Matthews upon the service of summons and complaints and offers to compromise, served by Matthews and accepted by the plaintiffs, upon which executions were issued and were outstanding in the hands of the sheriff when this action was begun on the 10th of December, 1891.

The debts on which these judgments were recovered were contracted before the mortgages were executed, and Matthews was also indebted to others when the mortgages were given, and when they were executed Matthews owned property not described in them.

March 14, 1893, Albert P. Sturtevant, a resident citizen of the State of Connecticut, died, leaving a last will and testament, which was duly probated in said State March 23, 1893, and letters testamentary were duly issued thereon to Edwin B. Studley, Marvelle W. Cooper, Charles P. Sturtevant, Allen Tenney and Arthur H. Brewer, and on June 13, 1893, ancillary letters were duly issued to Edwin B. Studley by the Surrogate's Court of the city and county of New York, and June 19, 1893, this action was revived and continued against said ancillary executor.

*Joseph Fettretch,* for the appellants.

*George S. Hastings,* for respondent Cooper.

*Elihu Root,* for respondent Studley.

FOLLETT, J.:

The defendants Matthews and Waddell have not answered in this action, evidently desiring that the plaintiffs should prevail. This is a race between creditors, at the outset of which the debtor favored his landlord and indorser, but before the close he attempted, in the interest of other creditors (these plaintiffs) to destroy the securities which he had voluntarily given, on the ground that they were fraudulent, but on the trial he testified in behalf of the plaintiffs, and when confronted with his notes and the indorsements which the mortgages were given to secure, he admitted that all of them were just and honest, and no attempt was made to show that

they were not.   It is apparent that Matthews gave these mortgages with an honest intent to secure to his creditor his just demands, but that for some reason, within thirty days, he came to regret his act and attempted, by permitting other creditors to charge him with fraud, which he failed to deny, to substitute them in the place of his landlord.· The court found that the mortgages were given and received to secure honest debts, without any intent on the part of the mortgagor or mortgagees to hinder, delay or defraud creditors. No other conclusion was possible under the evidence.   These mortgages were not fraudulent in fact, nor were they fraudulent in law. Matthews had a legal right to secure Mr. Sturtevant by chattel mortgages on his property, which he did.   The court finds that Sturtevant did not know that the trust mortgage was to be executed until after it had been executed and delivered.   It is apparent that Matthews, being in poor health and desiring to put some persons in charge of his property, which he was about to leave, devised, through his attorney, this scheme of giving to trustees a mortgage upon the property so as to give them a right to possession and power to manage.

The court refused to find that Matthews was insolvent when the mortgages were given or that he was insolvent at the date of the trial, and he testified that he had property not included in the mortgage.   It does not appear that an execution had been returned unsatisfied against him or that the sheriff had been unable to find property subject to execution, and we think the refusal of the court to find insolvency was justified by the evidence.

Had Sturtevant participated in this scheme a more serious question might have arisen, but he did not.   That no ground was established for setting aside the two mortgages given to Sturtevant is apparent.   The exact situation in respect to the trust agreement is not shown.   Whether the defending trustee was in possession of the property and engaged in running the house at the time of the trial, is not disclosed by the record.   To set aside this mortgage without setting aside those given to Sturtevant would avail the plaintiffs nothing, for the trust mortgage in no way increases the burden upon the property, as the executor of the mortgagee has the right to close his mortgages at any time, and when the amount secured by them is paid the third falls.   Again, the trustee, having

acted in good faith and without any intent to hinder, delay or defraud the mortgagor's creditors, is entitled to be protected.

The judgment should be affirmed, with costs.

PARKER, J., concurred.

VAN BRUNT, P. J. (dissenting):

I cannot concur in the conclusion arrived at by Mr. Justice FOLLETT, that the judgment in this action in all its parts should be affirmed. It is undoubtedly true that no ground was established for setting aside the two mortgages given to Sturtevant. But in respect to the trust agreement an entirely different question arises. It is true that such agreement appears to have been executed at the same time with the mortgages. But the validity of the mortgages cannot validate an agreement which, as to the creditors of Matthews, was void upon its face. It might very well be urged that the mortgages and trust agreement having been executed at the same time, and the trust agreement being fraudulent, the mortgages must, therefore, fall with it. But the rule to which attention has been called does not apply to mere fraud in law, but only to those cases in which a series of papers are executed at the same time, and a fraudulent intent in fact pervades the whole transaction. The mortgages to Sturtevant were executed in good faith to secure to him the amount of his indebtedness. The trust agreement was also executed to add to that security, but without Sturtevant's knowledge or consent. Such trust agreement was not one which could prevail or give any title to the trustees therein named as against the creditors of Matthews. Such being the case, Matthews' creditors had the right to avoid that agreement. The plaintiffs in this action were creditors of Matthews at the time of the execution of the agreement, and they have brought this action to set it aside as an impediment to their securing the payment of their debts. It is not necessary to discuss the nature of the agreement. It is apparent that it is such an agreement as an insolvent debtor cannot make; and that trustees appointed thereunder cannot hold the property of such debtor as against his creditors who have filed their bills to enforce judgments which they have obtained against the creator of the trust.

It is urged in the opinion referred to that it does not appear that an execution has been returned unsatisfied against Matthews, or

that the sheriff has been unable to find property subject to execution, and that, therefore, the refusal of the court to find insolvency was justified by the evidence. It is not necessary that a judgment creditor should have an execution returned unsatisfied in order that illegal incumbrances upon the part of the judgment debtor should be set aside. The creditor may maintain his bill in aid of an execution still in the sheriff's hands. If Matthews, the creator of the trust, at the time of the bringing of this action, was not insolvent, it seems to be strange that these judgments should be standing against him and executions certainly unsatisfied. There is no proof whatever that Matthews had property out of which these executions could be satisfied. I do not understand it to be necessary for a judgment creditor, in order to attack the fraudulent transfer of the property of his debtor, to show that he has an execution returned unsatisfied, or that the debtor had no property. The fact that the creditor has a judgment, and that he has an execution in the hands of the sheriff unsatisfied, gives him standing in court to set aside clouds upon the property of the judgment debtor in order that his execution may attach.

Under these circumstances it seems to me that it was error to sustain this trust agreement and to prevent these creditors from reaching the equity in the property of the judgment debtor covered by the mortgage and trust agreement in question.

I think the judgment should be modified by declaring void the trust agreement, and setting the same aside so far as it affects the plaintiffs in this action.

Judgment affirmed, with costs.