WILLIAM J. DELANEY, as Receiver of the Property of THOMAS B. VALENTINE, Respondent, *v.* THOMAS B. VALENTINE, WILLIAM H. LOCKWOOD and ANN A. LOCKWOOD, Appellants. No. 1.

WILLIAM J. DELANEY, as Receiver of the Property of THOMAS B. VALENTINE, Respondent, *v.* THOMAS B. VALENTINE, WILLIAM H. LOCKWOOD and ANN A. LOCKWOOD, Appellants. No. 2.

WILLIAM J. DELANEY, as Receiver of the Property of THOMAS B. VALENTINE, Respondent, *v.* THOMAS B. VALENTINE, WILLIAM H. LOCKWOOD and ANN A. LOCKWOOD, Appellants. No. 3.

1. DEBTOR AND CREDITOR — TRANSFERS NOT CONSTITUTING A GENERAL ASSIGNMENT. When a chattel mortgage, executed and delivered by a debtor to one of his creditors, and a transfer of business accounts to a third person, do not cover all the debtor's property and are only intended

to secure the payment of debts of the mortgagee and certain other creditors mentioned therein, they are not within the statute which regulates
the making of general assignments for the benefit of creditors, and prohibits preferences for more than one-third of the assigned estate (L. 1887,
ch. 503).

2. FRAUDULENT CONVEYANCES — CHATTEL MORTGAGE. A chattel mortgage of a portion of his property, made by a debtor to secure some of his
creditors, when his property is insufficient to pay all, executed and
received in good faith, and without any fraudulent intent on the part of
either of the parties, cannot properly be set aside as falling under the condemnation of the statute against fraudulent conveyances (2 R. S. 137, § 1).

3. STATUTE OF PERSONAL USES. The statute making transfers of personal property for the use of the grantor void as to creditors (2 R. S. 135,
§ 1), was intended to cover only passive trusts for the exclusive use of the
grantor, or where the use of the grantor is the chief purpose, and has no
application to trusts which are only incidental, and are expressed, or result,
to the use of the grantor, after the exercise of the primary purpose, which
is lawful.

4. CHATTEL MORTGAGE NOT WITHIN STATUTE. A chattel mortgage,
given in good faith to secure the debt of the mortgagee, is not brought
within the condemnation of the Statute of Personal Uses by the fact that
it contains an incidental provision that any surplus, after payment of the
debt, shall be returned to the mortgagor.

5. MORTGAGE TO SECURE CREDITORS BESIDES MORTGAGEE. Nor does
the Statute of Personal Uses apply to such a mortgage, although given to
secure the debts of other creditors, as well as that of the mortgagee.

6. TRANSFER TO THIRD PERSON. A debtor, whose property is insufficient to pay his debts in full, can make a valid sale or pledge of a portion
of it to a third person to secure a part of his creditors.

7. VALID TRANSFER. A transfer, by a debtor whose property is insufficient to pay his debts in full, of a portion of his personal property to a
third person to secure a part of his creditors, is not within the Statute of
Personal Uses, when it contains no provision for returning any surplus;
and if made in good faith, for the purpose of giving lawful preferences
in the payment of honest debts, and so not fraudulent in fact, it is not
fraudulent in law, but is valid as against other creditors.

8. FRAUD IN LAW. Fraud in law exists only when the acts upon which
it is based carry in themselves inevitable evidence of it independently of
the motive of the actor.

*Delaney* v. *Valentine*, 11 App. Div. 631, reversed.

(Argued December 15, 1897; decided January 11, 1898.)

APPEALS, by permission, from judgments of the Appellate
Division of the Supreme Court in the third judicial department, entered December 17, 1896, which affirmed, respectively,

a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term, in each of the above-entitled actions.

The plaintiff was duly appointed as receiver of the property of Thomas B. Valentine in proceedings supplementary to execution, and was authorized to commence and prosecute these actions. They were brought to set aside two chattel mortgages made by Thomas B. Valentine to Ann A. Lockwood, one under date of March 23, 1893, and the other on the fourteenth day of the following June ; also to set aside a sale made under the last mortgage, and an assignment of accounts made by Valentine to William H. Lockwood. The ground upon which this relief was sought was that they were fraudulent as to the creditors represented by the plaintiff.

On the twenty-third of March, 1893, Valentine was indebted to various persons, among others, to the defendant Ann A. Lockwood, to whom he was indebted in the sum of seven thousand five hundred dollars. He was also indebted upon a note for twelve hundred dollars, indorsed by the defendant William H., and one of fifteen hundred dollars indorsed by Augusta H. Lockwood. For the purpose of securing the payment of these notes and his indebtedness to her, he, on that day, executed and delivered to Ann A. a chattel mortgage upon his stock of goods, which was in the store occupied by him 'and known as No. 468 Broadway, in the village of Saratoga Springs.

On the fourteenth of June Valentine was still indebted upon the claims mentioned, and also to certain other persons in various sums, amounting to about twenty-one hundred dollars. To secure the payment of all those debts he executed and delivered to Ann A. another chattel mortgage upon the property then in his store. The mortgage empowered her in default of payment to sell the mortgaged property, and out of the proceeds of the sale to pay the debts mentioned and interest, and the expenses of the sale, rendering the overplus, if any, to the mortgagor.

On the same day Valentine, by a written agreement, sold

and transferred to William H. Lockwood certain accounts or choses in action as collateral security for the payment of a portion of the debts secured by the chattel mortgage to Ann A., and also to secure the debts of certain other creditors named therein. All the debts mentioned in the mortgages and agreement were honest debts owing by Valentine to the creditors mentioned. Immediately after the execution and delivery of the last chattel mortgage, the mortgagee took possession of the mortgaged property, duly advertised it to be sold thereon on the twentieth of the same month, and on that day it was sold at public auction and purchased by William H. Lockwood for the sum of fifty-five hundred dollars. The sale was fairly conducted, and the purchaser was the highest bidder. When the chattel mortgages and agreement were executed, Valentine owed other creditors not mentioned in either, including the creditors in whose interest these actions were brought. He also had at that time other property not included in the mortgages or agreement, but it was not sufficient in amount to pay any of his other creditors in full. By the execution and delivery of these instruments the judgment debtor intended to secure the payment of the debts specified in preference to his other debts, but did not in any other manner intend to hinder, delay or defraud any of his creditors. The defendants Ann A. and William H. Lockwood took the mortgages and transfer of accounts in good faith and for the sole purpose of securing the payment of the debts mentioned, and neither of them intended thereby to hinder, delay or defraud any of the other creditors of the debtor. When these conveyances were made the indebtedness of Valentine exceeded the value of his property, and they had the effect of preventing the creditors represented by the plaintiff from collecting the whole amount of their debts, as the property which remained was insufficient to pay them in full.

Upon these facts, which are admitted by both parties, the trial court held that the chattel mortgages to Ann A. and the transfer of accounts to William H. Lockwood were void, upon the ground that they created an unlawful trust for the

benefit of certain creditors who were not named as parties to either of those instruments, and also upon the ground that they created an unlawful trust for the benefit of Thomas B. Valentine. Thereupon the court directed a judgment against the defendants in each of the actions, adjudging the transfer and chattel mortgages void as to the creditors represented by the plaintiff, and required them to account for and pay to him all moneys received upon the accounts or for the property so mortgaged to be applied upon the judgments represented by him.

*Edgar T. Brackett* and *Walter P. Butler* for appellants. There is no question of actual fraud, or of intent to defraud in the case, the trial court having found expressly against either. It is the intent to delay, and not the fact of delaying, which the statute condemns, and the finding of delay, etc., is without effect and senseless. (Bishop on Insolv. Debtors [3d ed.]. 273; *Commercial Bank* v. *Bolton,* 87 Hun, 547; *McNaney* v. *Hall,* 86 Hun, 415; *London* v. *Martin,* 79 Hun, 229; *Gomez* v. *Hagaman,* 84 Hun, 148.) The chattel mortgage of June 14, 1893, given by Valentine to Mrs. Lockwood, to secure debts due to her, and also various debts due other persons, and the assignment of accounts from Valentine to William H. Lockwood, were and are, and each of them was and is, a valid, legal instrument, and there is nothing appearing on the face of either of them condemning its legal character. (2 R. S. 135, § 1; *Curtis* v. *Leavitt,* 15 N. Y. 116; *Delaney* v. *Valentine,* 80 Hun, 476; *Dunham* v. *Whitehead,* 21 N. Y. 131; *Young* v. *Heermans,* 66 N. Y. 374; *Moore* v. *P. T. & S. Co.,* 133 N. Y. 144; *Brown* v. *Guthrie,* 110 N. Y. 435; *King* v. *Van Vleck,* 109 N. Y. 363; 101 N. Y. 504; *Ottman & Co.* v. *Cooper,* 81 Hun, 530; *Sloan* v. *Birdsall,* 58 Hun, 317; *Bier* v. *Kibbe,* 43 Hun, 174.) If the chattel mortgage of June 14, 1893, and the assignment of accounts, are held void for the reasons hereinbefore stated, as being to secure various debts, not only those owing to the mortgagee, Mrs. Lockwood, but also those of the other persons named, and as

requiring a return to the mortgagor of the surplus over the debts secured, and, therefore, as contravening the Statute of Personal Uses, they are void only to the extent that they transgress, and, therefore, are good as security for Mrs. Lockwood's (the mortgagee's) own claims that are secured by the mortgages. (*Boyd* v. *Dunlap*, 1 Johns. Ch. 478; *Friedman* v. *Hirsch*, 18 N. Y. Supp. 85; *Bigelow* v. *Ayrault*, 46 Barb. 143; *Van Wyck* v. *Baker*, 16 Hun, 169; *Pond* v. *Comstock*, 20 Hun, 493; *Clift* v. *Moses*, 75 Hun, 517; *Sloan* v. *Birdsall*, 58 Hun, 317.) The subsequent sale, in November, 1893, under execution against Valentine, of the goods covered by the chattel mortgage, as the property of Valentine, wholly purged the transaction of the giving of the chattel mortgage of any vice, and relieved the defendant Ann A. Lockwood from any liability to account for the proceeds of the property, even though the whole transaction of June 14, 1893, was illegal. (*Sands* v. *Codwise*, 4 Johns. 537; *Knower* v. *C. N. Bank*, 124 N. Y. 552; *Stephens* v. *Perrine*, 143 N. Y. 476; *Austin* v. *Bell*, 20 Johns. 442; *Rinchey* v. *Stryker*, 28 N. Y. 45; *Cramer* v. *Blood*, 57 Barb. 155; 48 N. Y. 684; *Murphy* v. *Briggs*, 89 N. Y. 446; Bump on Fraud. Conv. 473; *Tremaine* v. *Mortimer*, 128 N. Y. 1; *Bostwick* v. *Menck*, 40 N. Y. 383; Code Civ. Pro. § 2468; *Dubois* v. *Cassidy*, 75 N. Y. 298; *Masten* v. *Amerman*, 51 Hun, 244.)

*A. W. Shepherd* for respondent. This appeal is purely upon questions of law, and no review of the facts can be had by this court. (*Aldridge* v. *Aldridge*, 120 N. Y. 614; *Cook* v. *N. Y. E. R. R. Co.*, 144 N. Y. 117.) The instruments, and each of them, are void under section 1 of 2 Revised Statutes, 135, for the reason that they create a trust in favor of the mortgagor and assignor, and are, therefore, violative of the rights of creditors not parties thereto. (*Knapp* v. *McGowan*, 96 N. Y. 75; *Dillingham* v. *Flack*, 43 N. Y. S. R. 806; *Sutherland* v. *Bradner*, 116 N. Y. 410; *Karst* v. *Gane*, 136 N. Y. 321; *Delaney* v. *Valentine*, 80 Hun, 476; *Knower* v. *C. N. Bank*, 124 N. Y. 552; *Curtis* v. *Leavitt*, 15 N. Y. 9; *R. W. Co.*

88

v. *Fielding*, 101 N. Y. 504; *Billings* v. *Russell*, 101 N. Y. 233.) The fact that after the sale under the mortgages judgments were recovered by the defendant Ann A. Lockwood against Valentine, and the property which had been sold at the mortgage sale again sold as still the property of Thomas B. Valentine by virtue of said executions, alleged as a defense, is not only no defense, but an element, and a strong one, of the intent to hinder and delay creditors for which purpose the mortgages were given. (*Gouveneur* v. *Sanford*, 2 Hall, 624; *Van Alstyne* v. *Cook*, 25 N. Y. 489; *Steele* v. *Sturges*, 5 Abb. Pr. 442; *Field* v. *Sands*, 8 Bosw. 685; *Wiswall* v. *Sampson*, 14 How. [U. S.] 52; *Jermain* v. *Hendricks*, 100 N. Y. 279.)

MARTIN, J.  In determining the validity of the judgments from which these appeals are taken, it must, at the outset, be assumed that all the transactions between the judgment debtor and the other defendants were based upon good and sufficient considerations, were entered into in good faith by all the parties, and that the mortgages and transfer of accounts were made, delivered and received with no intent upon the part of any of them to hinder, delay or defraud the creditors of the former.  The learned trial court so found, and its findings as to those facts must be treated as conclusive.

One of the grounds upon which the plaintiff seeks to defeat these appeals is that the assignment and mortgages should be read together, and when thus considered they constitute a general assignment of all the debtor's property and are void, because not made in conformity with the statute relating to general assignments for the benefit of creditors, and because preferences were thereby created not allowed by that law.  We think this contention cannot be sustained.  It was expressly found that the judgment debtor had other property not included in either of the chattel mortgages, or in the transfer of accounts. Moreover, he made no general assignment.  He simply executed and delivered to one creditor chattel mortgages to secure her own debt and the debts of others mentioned therein, and transferred his accounts to another person for the same general

purpose. Obviously, these conveyances were not intended as
a general assignment of all of his property for the benefit of
his creditors. Nor was there any finding or proof that any
such assignment was contemplated, or that the instruments
given were a part of any scheme or plan which included
a general assignment or that they were made with any intent
to avoid the statute relating to that subject. On the con-
trary, the court expressly found that the only purpose of
these conveyances was to secure the payment of the honest
debts of the creditors named therein. A similar question
arose in *Tompkins* v. *Hunter* (149 N. Y. 117, 121), where it
was held that a sale or transfer of his property by a debtor in
payment of the debts of a creditor, without making or con-
templating a general assignment, was not within the provis-
ions of the statute which regulates the making of general
assignments for the benefit of creditors, and prohibits prefer-
ences for more than one-third of the assigned estate. The
same doctrine was held in *Brown* v. *Guthrie* (110 N. Y. 435);
*Manning* v. *Beck* (129 N. Y. 1); *C. N. Bank* v. *Seligman*
(138 N. Y. 435, 445), and *Maass* v. *Falk* (146 N. Y. 34).
These cases must be regarded as decisive of this question.

In discussing the remaining questions, we shall consider
separately the chattel mortgages and the transfer of accounts,
as they were between different parties and involve different
principles. Such a consideration of these conveyances will
avoid any confusion as to the facts relating to either and
enable us to clearly understand the principles of law applica-
ble to each. In examining the questions which relate to the
mortgages, it will be unnecessary to refer to the mortgage of
March twenty-third, as it was in effect superseded by that of
June fourteenth, and, if the latter was valid, the rights of the
parties were controlled by that alone.

The trial court having found that this mortgage was made
and received in good faith, without any fraudulent intent on
the part of either of the parties, it becomes obvious that, if
the debtor possessed the right to mortgage a portion of his
property to secure his honest debts to some of his creditors,

when it was insufficient to pay all, it could not be properly set aside as falling under the condemnation of the statute against fraudulent conveyances. (2 R. S. 137, § 1.) The existence of that right has been recently recognized by this court, where it was held that an insolvent debtor might sell or transfer the whole or any part of his property to one or more of his creditors in payment of or to secure their debts, when that was his honest purpose, although the effect would be to place his property beyond the reach of other creditors and render their debts uncollectible. (*Tompkins* v. *Hunter*, *supra*.) That case contains no new doctrine, but merely restates one that has long been established by the decisions of this court, as will be seen by an examination of the cases cited in the opinion. Any further discussion of the question is quite unnecessary.

The plaintiff also contends that this chattel mortgage was as to creditors void on its face, being in contravention of the statute against personal uses. (2 R. S. 135, § 1.) It contained a clause which provided that in case of default the mortgagee might take possession of and sell the mortgaged property, and out of the proceeds retain sufficient to pay the debts mentioned therein, with interest and expenses, "rendering the overplus, if any, unto said party of the first part, his executors, administrators and assigns." It is upon this clause that the plaintiff bases his claim that the mortgage was void under that statute. In examining that question it is perhaps proper to consider it, first, in its relation to the debt due the mortgagee, and, second, as to the debts which were secured to other creditors.

If this mortgage had been given to secure only the debt of the mortgagee, obviously it would not have fallen within the provisions of the statute which the plaintiff invokes. The primary purpose of such a conveyance is not to secure the use of the property to the mortgagor, but is to pay or secure his debt. The provision in the mortgage that the surplus, after the payment of the debts, should be returned to the mortgagor, was a mere incident of the conveyance, and in no way

controls in determining the character of the transaction. If that statute was given the effect contended for, it would render void as to other creditors every mortgage or pledge of personal property to secure a debt. The statute was intended to cover only passive trusts for the exclusive use of the grantor, or where the use to the grantor is its chief purpose, and has no application to trusts which are only incidental, and are expressed, or result, to the use of the grantor, after the exercise of the primary purpose, which is lawful. Some of the earlier cases, perhaps, tend to sustain the plaintiff's contention, but they must be regarded as overruled by the later cases in this court, where a contrary doctrine has been held. (*Leitch* v. *Hollister*, 4 N. Y. 211; *Curtis* v. *Leavitt*, 15 N. Y. 9; *Dunham* v. *Whitehead*, 21 N. Y. 131; *Van Buskirk* v. *Warren*, 2 Keyes, 119; *Knapp* v. *McGowan*, 96 N. Y. 75.) In the *Leitch* case it was decided that the provisions of that statute had no application where an assignment was to the creditors themselves for the purpose of securing their demands, whatever its form, as it was in legal effect only a mortgage, and created a specific lien upon the property assigned. In *Curtis* v. *Leavitt* it was expressly held that that statute had no application to mortgages, trusts or other instruments created to raise money or secure a creditor. In the *Dunham* case it was decided that an assignment by a debtor to a creditor of all his personal property and choses in action, for the payment of a debt, with a provision for a return of the surplus, was in effect a mortgage and not void under the Statute of Personal Uses. In *Van Buskirk* v. *Warren* this court determined that an assignment made directly to certain creditors, for the purpose of securing their demands, was not within that statute. The *Knapp* case was to the effect that a debtor, whether solvent or insolvent, might, if acting in good faith, mortgage a portion or the whole of his property to secure existing claims against him. The doctrine of these cases is conclusive upon the question, and it follows that the Statute of Personal Uses had no application to the mortgage under consideration, so far, at least, as the transfer was directly to the creditor.

This leads us to consider whether the fact that this mortgage was given to secure other creditors also in any way changes the situation.    How the effect of that statute can differ in the two cases is not apparent.    The reasons which have been given for holding that it has no application to a mortgage to secure the debt of a mortgagee apply with equal force to a mortgage given to secure the mortgagee and other creditors as well.    The validity of such a mortgage is fully sustained by the decisions of this court.    (*Royer Wheel Co.* v. *Fielding*, 101 N. Y. 504; *Brown* v. *Guthrie*, 110 N. Y. 435; *Hine* v. *Bowe*, 114 N. Y. 350; *Ottman* v. *Cooper*, 81 Hun, 530; *S. C.*, 151 N. Y. 652.)    In the *Royer Wheel Co.* case it was held not only that the Assignment Act did not apply to a specific assignment by a debtor for the benefit of one or a portion of his creditors, but also that a mortgage given to secure a portion of his creditors was valid, and was not rendered void by a provision requiring any surplus to be paid over to the mortgagor.    In *Brown* v. *Guthrie* the defendant and M. entered into a contract by which it was agreed that, in consideration of M.'s executing to the defendant his notes for twenty-four hundred dollars, secured by a chattel mortgage, the defendant would cancel certain notes held by him against M., loan him a sum of money, and pay his debts to such creditors as M. should thereafter designate, to an amount mentioned.    This agreement was carried into effect.    Its validity was subsequently challenged, and this court decided that the transaction was not fraudulent as a matter of law ; that it could not be considered as a general assignment by an insolvent debtor, and that it was valid as against creditors.    In the *Hine* case a firm executed to the plaintiff a bill of sale of the firm property, and the plaintiff executed an instrument in return by which he agreed to cancel his indebtedness against the defendant and pay other debts of the firm not exceeding a sum named, and it was held that the agreement did not constitute an assignment, but was a sale, and that as the sale was made in good faith it was valid and not affected by the fact that the vendors reserved the right to direct upon what debts the surplus should be paid.    In the

*Ottman* case an action was brought by a judgment creditor to set aside three chattel mortgages given by their debtor to the defendants, upon the ground that they were fraudulent and void as against creditors whose indebtedness existed when the mortgages were given. One of the mortgages was to trustees to secure the indebtedness of a third person. The trial court found that the trust mortgage was executed in good faith, and the General Term held that none of the mortgages was fraudulent either in law or in fact, and that the trustees were entitled to be protected. The prevailing opinion of the General Term in that case was adopted by this court. The principle of those cases renders it manifest that the mortgage was valid and that the courts below improperly set it aside.

This leaves for consideration the validity of the transfer of accounts by the debtor to William H. Lockwood. In determining this question it must be assumed that the accounts were sold, not to secure any debt of Lockwood's, but as collateral security for honest debts owing by the debtor to the creditors named   Thus, the point upon which its validity turns is whether a debtor, whose property is insufficient to pay his debts in full, can make a valid sale or pledge of a portion of it to a third person to secure a part of his creditors. It is obvious that this transfer did not fall under the condemnation of the statute against personal uses, as it was absolute and contained no provision for the benefit of the person making it; nor, under the findings of the court, can it be said to have been in violation of the statute against fraudulent conveyances, as it was not made with an intent to hinder, delay or defraud creditors. Under the authorities already cited, this transfer, if it had been made directly to the creditors, or to one creditor for the benefit of himself and others, would have been valid. So we are called upon to determine whether the fact that it was to a third person, instead of to one of the creditors, renders it invalid. The transaction was in effect a sale by the debtor of his choses in action as collateral security for the payment of certain of his creditors. If the property transferred exceeded in value the

amount of debts it was given to secure, it might have been
reached by other creditors.    In the absence of a bankrupt law,
a debtor is not deprived of the control of his property by
mere insolvency.    His debts are only personal obligations, and
so long as he acts in good faith and in a manner not pro-
hibited by law, he may deal with it as he sees fit.    But it is
said that in this case there was fraud in law although there
was none in fact.    Evidently there can be no fraud in law or
in fact without a breach of some legal or equitable duty.    It
is true there may be fraud in law where no actual fraudulent
intent is proved, but in such cases the law presumes fraud,
because it is a necessary consequence of some established act.
In other words, fraud in law exists only when the acts upon
which it is based carry in themselves inevitable evidence of it
independently of the motive of the actor.    This principle is
illustrated where an insolvent debtor makes a gift of his prop-
erty    In such a case the property may be reached by credit-
ors because it constitutes a fund which justly belongs to them,
while the donee has no equitable right to it.    Any voluntary
transfer by a debtor which deprives his creditors of a fund
that equitably belongs to them is necessarily a fraud upon
their rights, and, therefore, fraud is implied, which is some-
times denominated fraud in law.    The case here is different.
Here one creditor had no superior right over another unless
the debtor saw fit to confer it upon him.    As he might, how-
ever, prefer one creditor to another, and as in this case that
was the purpose of the debtor, his purpose, at least, was
lawful.    But it is said that the means employed to carry it
into effect were unlawful and the transaction, consequently,
void    If the means were actually illegal, the result claimed
might follow.    But our attention has been called to no statute
or principle of common law forbidding such a transfer.
Surely it was not condemned by the statute against personal
uses, nor, as its purpose was an honest one, by that relating
to fraudulent conveyances.    We find no principle upon which
the claim of the plaintiff can be upheld.    Suppose creditors
were absent, can it be that a debtor could not deliver property

to a third person to secure his debts to such absent creditors? We think not. If he could, then obviously this transfer was valid. There could be no more fraud in this case than in the one supposed. If one would be valid, we perceive no reason why the other would be invalid.

But the plaintiff claims that the authorities establish a contrary doctrine, and cites the cases of *Goodrich* v. *Downs* (6 Hill, 438); *Barney* v. *Griffin* (2 N. Y. 365); *Collomb* v. *Caldwell* (16 N. Y. 486); *Sutherland* v. *Bradner* (116 N. Y. 410) and other cases of similar import to sustain that claim. When these cases are examined, it will be discovered that they were decided upon principles which have no application here. In the *Goodrich* case there was a general assignment in trust for the benefit of a portion of the creditors of the debtor, with a provision that, after the payment of their debts, the surplus should be returned to the assignor. So in the *Barney* case, there was a transfer by an insolvent debtor of all his property in trust to pay certain specified creditors, and then to reconvey to the debtor, without making any provision for his other creditors. The *Collomb* case was also one where there was an assignment in trust to pay certain debts, with a provision reserving the surplus to the assignors. In the *Sutherland* case there, was a preferential assignment in trust for the payment of part of the creditors, with a remainder to the assignor. It is to be observed that in all of these cases there was an express provision by which the debtor reserved to himself, or for his own benefit, a surplus of the property assigned, and it was upon that ground that those decisions were founded. The fraud in those cases lay in the fact that the property exceeded, or was by the parties supposed to exceed, the amount of preferred debts, and a surplus was contemplated, which should be reconveyed to the assignor without payment of his other creditors. It was the intent to place that portion of his property in the hands of another in trust for himself, to the exclusion of creditors, that was fraudulent. As his property was a fund out of which his creditors were entitled to be paid, it was held that an attempt

89

to assign a portion of it in trust to pay only a part of his debts and then to convey the remainder to himself was void, because it disclosed a fraudulent motive upon his part to deprive his other creditors of any recourse to such surplus or, at least, to delay them in reaching it, and, therefore, was in direct contravention of the statute against fraudulent conveyances. (*Doremus* v. *Lewis,* 8 Barb. 124.) We think those cases are clearly distinguishable from this, and serve as another illustration of what is commonly termed fraud in law. In all of these cases the act of the debtor was one which disclosed an actual fraudulent intent within the statute against fraudulent conveyances, or fraud was the necessary result of the acts proved. In this transfer there was no provision for returning any surplus. It was not an assignment for the benefit of creditors, but was a mere transfer of property to a third person by the debtor as security for certain of his debts. We are of the opinion that the transfer of accounts cannot be said to be fraudulent in law, and, as it was found not to have been fraudulent in fact, it was valid, and the court was not justified in setting it aside.

It may be said that if this transfer is sustained it will open the door for fraudulent transfers by insolvent debtors. The answer is that the door would be opened no wider in such a case than it has already been in cases where transfers are directly to one creditor to secure a debt of his own and the debts of others. In either case transfers may be fraudulently made. But when they are, they may be set aside as fraudulent in fact. Yet when made in good faith, for an honest purpose, we think they cannot be held fraudulent in law.

There are several other questions which were presented by the appellants upon the argument, but this disposition of those already discussed renders unnecessary the consideration of any of the other questions.

The judgments of the Appellate Division and Special Term should be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgments reversed.