ROBERT BROWN et al., Respondents, v. JAMES J. GUTHRIE, Appellant.

One M. and defendant entered into a contract by which it was agreed that, in consideration of M.'s executing to defendant his notes for $2,400, secured by chattel mortgage on all his goods and chattels, defendant would cancel certain notes held by him against M., amounting to $980.78; loan him $600 and pay debts of his to the amount of $619.21 to such creditors as M. should thereafter designate. It was also agreed M., as the agent of plaintiff, should be allowed to sell at public auction the goods on credit, defendant to receive all cash payments and notes taken on such sale, retain out of the same the amount of M.'s notes and pay over to him any surplus; defendant to be allowed $200 for his services. As part of the same transaction M. executed the notes and the chattel mortgage, which, however, did not cover all his personal property, and defendant canceled the notes held by him; the creditors of M., to whom payment was to be made were also designated. Defendant subsequently advanced the $600 and paid the debts as agreed. Plaintiff O'M., as sheriff, under an attachment in an action by plaintiff B. against M. levied on the mortgaged property. Defendant thereupon took and sold the same under his mortgage. In an action for an alleged conversion, the referee found that there was no fraud, in fact, as against M.'s creditors in the transaction. *Held*, that

it was not fraudulent as matter of law, and the action was not main-
tainable; that said transaction could not be considered as a general assign-
ment by an insolvent debtor, and so void because it reserved to him a
possible surplus at the expense of unpaid creditors and a right to subse-
quently make preferences; as it had none of the elements of a trust, but
was simply a transfer by chattel mortgage, the consideration for which
was evidenced and settled by the outside agreement; that the provision
for a sale on credit was made harmless by the stipulation that defendant
should take the credits as cash.

The material and essential characteristic of a general assignment is the
presence of a trust, the assignee taking title, not as absolute owner, but
merely as trustee for the performance of trust duties.

(Argued June 25, 1888; decided October 2, 1888.)

APPEAL from order of the General Term of the Supreme
Court in the fifth judicial department, made the first Tuesday
of January, 1886, which reversed a judgment in favor of
defendant, entered upon the report of a referee. (Reported
below, 39 Hun, 29.)

This action was brought by leave of the court, under section
677 of the Code, to recover damages for the alleged conversion
of personal property levied upon by plaintiff O'Meara, as
sheriff, by virtue of an attachment issued in an action wherein
plaintiff Brown was plaintiff and one Morrison defendant.
The defendant here justified his taking under a chattel mort-
gage executed to him by Morrison.

The referee found, in substance, the following facts:

On October 20, 1883, defendant and said Morrison entered
into an agreement, in and by which, after reciting that Mor-
rison was indebted to defendant in the sum of $980.79 upon
certain promissory notes therein described, and was also
indebted to other persons in a large amount, and that he was
the owner of certain personal property, which he affirmed to
be worth at least $2,500 and to be unincumbered, and that he
was desirous of obtaining from Guthrie an additional loan
of $1,200, or thereabouts, it was stipulated and agreed, in
consideration that Morrison would execute and deliver to
defendant his notes, to the amount of $2,400, and secure the
payment thereof by a chattel mortgage executed by him upon

all the goods and chattels then owned by him, defendant would cancel and surrender the notes then held by him, and would furnish to Morrison an additional loan of $600 within twenty days; and would also assume the payment of, and thereafter pay, such notes and accounts then owing by Morrison to other parties, as Morrison should direct, to the amount of $619.21. It was further agreed that Morrison, as the agent of defendant, should be allowed to sell said property at public vendue, on a credit of not to exceed one year, at such time before the first day of April, then next, as should suit the convenience of Morrison, and should personally receive and receipt for all cash payments and notes taken at such sale, and retain the same to the amount of the $2,400 notes, to apply in payment of said notes as they matured, defendant to account to, and pay over to, Morrison any surplus. It was further agreed that defendant should be allowed $200 for his services in the premises. On the same day, and as part of the same transaction, Morrison executed to defendant his notes for the $2,400, as agreed, and also the chattel mortgage in question, to secure the payment thereof. The mortgage authorized defendant to take possession of the mortgaged property, and sell the same in case of non-payment of said debt, at maturity, or in case he should at any time deem the property or debt unsafe. The mortgage made no reference to the agreement. Defendant, at the same time, canceled the notes for $980.79, then held by him. It appeared by the evidence that defendant gave Morrison three checks for $800 each, at the same time directing Morrison to deliver those checks to one Duncan McRae, with instructions to retain them until he called for them. Defendant called on McRae the same day and the checks were returned to him by McRae. The referee also found that, on November third, defendant advanced Morrison $600 in cash in pursuance of the agreement. At the time of the execution of the agreement, Morrison made a statement to defendant of the persons to whom he was then indebted, and the amount he was owing them, respectively, and whom he desired that defendant should pay to the amount of $619.21,

in pursuance of the terms of the agreement, and defendant subsequently paid thereon the total sum of $401.28. The referee also found that the said chattel mortgage "was not made, executed or delivered with the intent to hinder, delay or defraud the creditors of said Morrison, but the same was given and received in good faith for a valuable consideration," and was "a good and valuable security and lien upon the personal property therein described."

*A. J. Abbott* for appellant. The affidavit upon which the attachment was issued, is utterly defective, and does not set forth "facts" showing judicially a cause of action. (Code Civ. Pro. § 636.) Guthrie being in actual possession of the property, at the time the attachment was levied, could hold it as against a void attachment. (1 Bliss Code [2d ed.], § 636; 13 How. 349; 16 Barb. 369; *Ellison* v. *Benstein,* 60 How. 145; 44 N. Y. 271, 274; Gould's Annual Dig. 1881, 202, 293, §§ 213, 216, 222; 3 Law Bull. 9; 4 id. 1; *Stevens* v. *Middleton,* 26 Hun, 470; 17 How. 559; 7 Rob. 199; 3 Sand. 703; 67 Barb., 330; *Steuben Co. Bank* v. *Alberger,* 78 N. Y. 252; *Martin* v. *Pool,* 4 Hun, 638; 67 How. Pr. 188; Red. Sur. [3d ed.] 47, 48; 1 Rumsey's Pr. 317, 323; *Dogan* v. *Sickle,* 15 N. Y. 248; *Flietman* v. *Sickle,* 13 id. 560; *Geldschmidt* v. *Herchorn,* id. 560; Kneeland on Attachments, §§ 237, 435, 436, 437, 438, 443; *Springfield* v. *Fields,* 7 Code of Civ. Pro. R. 356.) The clause in the agreement giving Morrison the privilege of sale, etc., was not fraudulent. (*Ford* v. *Williams,* 24 N. Y. 359; *Conklin* v. *Shelly,* 28 id. 360; *Brockert* v. *Harvey,* 91 id. 214; *Caring* v. *Richmond,* 22 Hun, 369; *Miller* v. *Lockwood,* 32 N. Y. 293; *Royer Wheel Co.* v. *Fielding,* 101 id. 504; *Hine* v. *Bowe,* Sup. Ct., Gen. T., First Dept., Oct. 27, 1887; 11 N. Y. State Rep. [No. 3] 484.) The levy made under the attachment was not a good levy. The property at the time being in the actual possession and control of the defendant Guthrie, and never having been reduced to the possession and control of the sheriff. (Code C. P. § 649, subd. 2.) In this case the lien of

the attachment was extinguished by the return of the execution unsatisfied. (Code Civ. Pro. §§ 706, 708, subd. 3, 1369, 1770, subd. 2, 1240.) The supplementary proceedings operated as a discharge of the attachment. The order supplementary gave lien superseding the attachment. (2 Bliss Code, 544, 545, §§ 2464, 2468 and notes.) The receiver was vested, as such, with the property. (11 Abb. Pr. [N. S.] 78; 4 How. Pr. 178.)

*J. W. Taylor* for respondents. A debtor cannot put his property beyond the reach of his creditors by assigning it to trustees for the payment of his debts, unless at the time he definitely settles their respective rights under the conveyance. (Opinion General Term, 134; *Hyslop* v. *Clarke*, 14 Johns. 458; *Wakeman* v. *Grover*, 4 Paige, 41; *S. C.*, 11 Wend. 187; *Barnum* v. *Hempstead*, 7 Paige, 568, 570; *Sheldon* v. *Dodge*, 4 Den. 217; *Boardman* v. *Halliday*, 10 Paige, 223; *Kircheis* v. *Schloss*, 49 How. Pr. 284; *Averill* v. *Loucks*, 6 Barb. 470; *Strong* v. *Skinner*, 4 id. 546; *McConnell* v. *Sherwood*, 84 N. Y. 522; *Barney* v. *Griffin*, 2 id. 365; *Bridgman* v. *Tillinghast*, 13 id. 215; *Haydock* v. *Coope*, 53 id. 68; *E'lias* v. *Farley*, 3 Keyes, 398; *Goodrich* v. *Downs*, 6 Hill, 438; *Mackie* v. *Cairns*, 5 Cow. 449; *Jackson* v. *Parker*, 9 id. 73; *Knapp* v. *McGowan*, 96 N. Y. 85; *Collomb* v. *Caldwell*, 16 id. 484; *Young* v. *Herrman*, 66 id. 374; *Curtis* v. *Leavitt*, 15 id. 130, 131–144, 175; *Leitch* v. *Hollister*, 4 id. 211.) The provision found in both instruments authorizing the mortgagor to retain possession of the property and to sell the same at public auction at such time as should suit his convenience and on credit was unlawful. (*Southard* v. *Benner*, 72 N. Y. 424; *Nicholson* v. *Leavitt*, 6 id. 510; *Burdick* v. *Post*, 6 id. 522; 10 id. 591; *Barney* v. *Griffin*, 2 id. 365; *Porter* v. *Williams*, 9 id. 142; *Rapalee* v. *Stewart*, 27 id. 310; *Wilson* v. *Robertson*, 21 id. 587; *Gates* v. *Andrews*, 37 id. 657; *Morrison* v. *Brand*, 5 Daly, 40; *D'Ivernois* v. *Leavitt*, 23 Barb. 63; *Whitney* v. *Krows*, 11 id. 198; *Dewey* v. *Moyers*, 72 N. Y. 70–76.) The provision in

the agreement giving to Guthrie the sum of $200 was also unlawful. (*Nichols* v. *McEwan*, 17 N. Y. 22; *Campbell* v. *Woodworth*, 24 id 304; Bishop on Insolvent Debtors, 173; *Jessup* v. *Hulse*, 21 N. Y. 168; *Coleman* v. *Burr*, 93 id. 31; *Edgell* v. *Hart*, 9 id. 213; *Cunningham* v. *Freeborn*, 11 Wend. 241; Bump on Fraud. Conv. [3d ed.] 22, 24, 272, 278.) The necessary and inevitable effect of the two instruments, when read and construed together was to hinder, delay and defraud Morrison's creditors, and hence the presumption of fraud conclusively arises. (*Oliver Lee & Co. Bank* v. *Talcott*, 19 N. Y. 147; *Russel* v. *Winnie*, 37 id. 591; *Edgell* v. *Hart*, 9 id. 213; *City Bank* v. *Westbury*, 16 Hun, 458; *Smith* v. *Cooper*, 27 id. 565; *Ball* v. *Slafter*, 26 id. 353; *McConnell* v. *Sherwood*, 84 N. Y. 531; *Savage* v. *Murphy*, 34 id. 507; *Case* v. *Phelps*, 39 id. 164; *Roeber* v. *Bowe*, 26 Hun, 554; *Granville* v. *Cohn*, 42 id. 381; *Billings* v. *Russell*, 101 N. Y. 226; *Crouse* v. *Frothingham*, 27 Hun, 126.)

FINCH, J. This controversy is a struggle between creditors of the same debtor for a preference. The defendant has obtained it by negotiation and agreement, and has had it wrested from him by the judgment of the court from whose determination he appeals.

The question turns upon the validity of his chattel mortgage, which was assailed as fraudulent. The finding of the referee was to the contrary, and has not been reversed by the General Term, which acted upon supposed errors of law, leaving the facts to stand as determined by the trial court. We must assume, therefore, that the transaction was not fraudulent if such an assumption is legally possible. And so, the circumstances of the allowance by the debtor of $200 for alleged services of the creditor, and the delivery of checks by the latter almost immediately returned, ceased to be material; for they were merely probative facts, bearing upon the honesty of the dealing, and while, to some extent, they may have been badges of fraud, their force is exhausted by the finding of honesty and good faith. We are confined to

a study of the transaction itself, and to the inquiry whether, as matter of law, it was fraudulent and void against other creditors.

The view of the case which prevailed with the General Term was, that the mortgage, and the agreement which led to it, taken together, amounted to a general assignment by an insolvent debtor, which was void because it reserved to him a possible surplus at the expense of unpaid creditors, and the right to make preferences subsequent to the conveyance. If the basis of the reasoning be sound, the result reached was a proper inference; but we are not satisfied that the mortgage and agreement amounted to a general assignment by the debtor. In form it was an absolute sale upon a chattel mortgage given for a fixed and agreed consideration; and while, nevertheless, such a sale, in spite of its form, may be proved to be an assignment in trust (*Britton* v. *Lorenz*, 45 N. Y. 51), yet in the present case we are unable to discover any such proof. The material and essential characteristic of a general assignment is the presence of a trust. The assignee is merely trustee and not absolute owner. He buys nothing and pays nothing, but takes the title for the performance of trust duties. There was no such element in the transaction between these parties. The purchaser became absolute owner and paid or secured the full amount of his mortgage. At first he had only the lien which it gave him. It did not cover the whole of the debtor's property. A quantity of beans were left unincumbered as the means in the hands of the debtor with which to pay the plaintiff's debt. The remainder of the property was included in the mortgage, the consideration of which was composed of several items, making, in all $2,400. Morrison owed Guthrie for money loaned the sum of $980.79, represented by promissory notes held by the latter. The evidence shows that to have been a subsisting and honest debt. These notes were surrendered to Morrison and canceled, and the debt they represented was discharged. There is no trace of any trust in that part of the transaction.

Guthrie further agreed to lend and advance Morrison $600 in .cash, and did actually advance him that money. It was agreed that Morrison owed Guthrie $200 for services previously rendered, and that debt was canceled. These items of actual indebtedness amounted to $1,780.29, and deducted from the $2,400, for which the mortgage was to be given, left a balance of $619.21; and the agreed manner of advancing this has furnished the principal ground of criticism. Guthrie stipulated to advance it thereafter by paying that amount to such creditors of Morrison as the latter should name. Of course, a mortgage may be given to secure future advances, and is not void or fraudulent for that reason. It simply does not operate, as a general rule, until the advances are made, and leaves the property exposed to execution until the loan is made and the lien accrues. The present mortgage, therefore, was good when executed for the amount already advanced; and, before the plaintiff's attachment was issued, became good for $600 more, or for $1,780.29; and that fact alone furnished a complete answer to plaintiffs's action, for it justified the taking and sale of the property by Guthrie, which is the ground of complaint. It further appears, how-ever, that at the time of the transaction the creditors of Morrison to be paid up to the agreed amount were named, and the sums owing to them specified; and the referee so finds as a fact; so that the agreement did not leave to Morrison the right to dictate, after the transaction, what creditors should be paid. Guthrie became bound to pay them absolutely out of his own means, and whether his security proved ample or insufficient. He held no part of the property in trust for the debtor, but solely as mortgagee, entitled to its proceeds till his debt was paid, and then bound to restore any surplus realized to the mortgagor, or those claiming under him. Such provision never hinders creditors, for they may pay the mortgage and take the property, or fasten upon the surplus. Such was not only the form of the transaction, but also the actual fact; and there was in it no element adequate, in disregard of its form, to turn it into a general assignment by an insolvent

debtor; for it did not cover all of the debtor's property, but contemplated leaving him in possession of his crop of beans, of $600 in cash, and any surplus in the property mortgaged beyond the exigencies of the debt; it involved no trust in Guthrie and no holding by him as trustee, but simply the ordinary lien of a mortgagee; and for the whole sum secured Guthrie either advanced the cash and rendered his services, or became liable to others for the exact amount.

The dealing, therefore, must be treated as a chattel mortgage by a debtor to his creditor, the consideration of which was evidenced and settled by the outside agreement. So regarded, the findings declare it to have been in good faith and not fraudulent. The arrangement for the sale on credit was made harmless by the stipulation that Guthrie should take the credits as cash, and himself bear the delay, and risk the solvency of the purchasers. (*Brackett* v. *Harvey*, 91 N. Y. 214.) We see no just reason why this creditor who defends should lose the preference which he obtained.

The order of the General Term should be reversed, and that entered on the report of the referee affirmed, with costs.

All concur.

Order reversed and judgment affirmed.