## Builders Material Company v. J. W. Johnson et al. On Appeal of John E. Burns Lumber Company, Appellant, v. Theodore Gottmann et al., Appellees.

### Gen. No. 15,402.

LIENS—*mechanic's lien act of 1903 construed.* That portion of the above act which provides that the lien of the contractor or subcontractor shall not be defeated "because of lack of proof that the material after the delivery thereof actually entered into the construction" of the building, is construed as meaning that the materialman, in the first instance, is relieved from the burden of proving that such material actually entered into the construction of the building; proof of delivery to the owner or his agent or a delivery at the place where the building is being constructed being made *prima facie* proof. If such *prima facie* proof is rebutted and it is affirmatively shown that such material was not actually used in the construction of the building, no lien can be had.

Mechanic's lien. Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed November 10, 1910.

WILLIAM S. CORBIN, for appellant.

FYFFE & ADCOCK, for appellee; EDMUND D. ADCOCK, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is a proceeding for a mechanic's lien, in which appellant filed an intervening petition claiming a lien for lumber sold to J. W. Johnson & Company, a subcontractor, under one Hodges, the general contractor, who had a contract with Cottman & Kretchner to build and construct for them what is called a "concrete" building. The lumber involved in this appeal while delivered at the building of the owner was not incorporated into it so as to become an integral part of the structure when completed. It is not disputed that the lumber was used for making forms or moulds into

which the concrete was poured in its plastic state in which it remained until hardened, after which the lumber was removed from the concrete and ultimately away from the premises by Johnson & Company. Johnson & Company's contract called for a stated sum for all of the concreting and work to be performed by it and was made with the general contractor.

Under the Mechanic's Lien Act of 1903 subcontractors and those claiming under them are accorded the same right to a lien and its enforcement as contractors. Section 7 of the Act of 1903 in some respects materially differs from the Acts in force preceding its enactment. By the Act of 1895 it was made incumbent upon claimants to make *prima facie* proof, as a *sine qua non* to establishing a lien, that material furnished for which a lien might be sought was in some way incorporated into the structure against which a lien is claimed. That part of the Act affecting this question is in these words: "Nor shall any such lien for material be defeated because of lack of proof that the material, after the delivery thereof, actually entered into the construction of such building or improvement, although it be shown that such material was not actually used in the construction of such building or improvement; provided it is shown that such material was delivered either to such owner or his agent, to be used in such building or improvement, or at the place where such building or improvement was being constructed for the purpose of being used in construction."

The proper construction and meaning of this statute is, we think, that the material man is relieved in the first instance from the burden of proving that the material the subject-matter of the lien, actually entered into the construction of the building, and that proof of delivery to the owner or his agent or of delivery at the place where such building was being constructed would constitute proof *prima facie* of that fact. The evident intention of the Act of 1903 being to relieve the lien claimant from the hardship of being compelled in the

first instance to make proof that such material was in fact ingrafted into the building, but did not go to the extent precluding the owner from rebutting by competent evidence the fact, if such be the fact, that the material did not enter into the construction of the building. It will be noticed that, by the terms of section 7 *supra*, when the material is delivered to the owner or his agent it must be for the ostensible purpose of being "used in such building or improvement," and if delivered at the place of construction then it must be shown that it was "for the purpose of being used in such construction." The language of the Act negatives, in our judgment, any presumption that it was intended thereby to give a lien upon delivery of the material at the place of construction regardless of the fact of such material being used in the actual construction of the building or improvement at such place. Delivery is only one step; it is not conclusive of the right to a lien. The use of the material in the construction of the building, while not necessary to be proved in the first instance, yet no lien can be allowed when the proof demonstrates that such material was not used in the construction of the building sought to be subjected to a lien. If it may be said that the statute is ambiguous, as to what is meant by the words "used in construction," then as the mechanic's lien Act is contrary to the course of the common law the ambiguity must be resolved against the party seeking to enforce a lien under it. If an interpretation should be indulged of the words "used in construction" so broad as to mean in the instant case that the lumber being used for moulds in which the concrete was poured for hardening (the concrete only remaining and forming a part of the structure, the lumber being removed and retained by Johnson & Company) was actually "used in construction," then it would seem by parity of reasoning that any other implement or tool of whatever nature used in the erection of such building or any of its parts would be within the statute, for the purchase

price of which a lien could be maintained. The lumber in question never was the property of the owner of the building. It was the property of Johnson & Company from the time appellant sold the same to it. It was not used in the actual construction of appellee's building within the meaning of the lien statute *supra*, but was an instrumentality used in shaping the concrete of which the interior walls of the building were constructed, and no more entered into the actual construction of the building than did derricks, tackle, engines, or any other mechanical appliance which may have been used in its construction and after completion of the building removed as the property of the contractor owning and operating them, or the subcontractor owning and operating them, as the case might be. The section of the statute in question has not, as yet, been before our Supreme Court for interpretation. However, decisions of sister States, where a similar provision is found as the one under discussion, are, we think, in harmony with our interpretation. Oppenheimer v. Morrell, 12 Atl. 307; Basshor v. B. & O. Ry. Co., 3 *ibid.* 285; Standard Oil Co. v. Lane, 75 Wis. 636.

On fact and principle Ames v. Dyer, 41 Me. 397, is much like the case at bar. The Maine statute provides that "Any ship carpenter, caulker, blacksmith, joiner or other person who shall perform labor or furnish materials for or on account of any vessel, building or standing on the stocks or under repair after having been launched, shall have a lien for his labor or materials." Lane invoked the statute for making certain moulds from which the ship "Oliver Jordan" was built, and the court says: "The molds for a vessel cannot be regarded as part of the materials with which it is constructed. They are used in its building as patterns in a foundry or the last for a shoe. They may be indispensable for the construction of a vessel, as are the tools of the carpenter or joiner, or the ground upon which the keel is laid, but they do not enter into its structure. The materials of which the molds are made

do not belong to the vessel, nor does the title to them pass to its purchaser. * 'The whole theory of a lien for labor and materials' says Sanford J., in Phillips v. Wright, 5 Sandf. 342, 'rests upon the basis that such labor and materials have entered into and contributed to the production or equipment of the thing upon which the lien is impressed.' Subsequently he said, 'Can it be said that materials are furnished for and toward building a ship when no part of them enters into or becomes a part of the ship?' "

In Sweet v. James, 2 R. I. 270, it was regarded as necessary to create a lien that the materials furnished should be incorporated in and become a part of the building upon which it is claimed to exist. "The model of a ship, the moulds by which its timbers are to be hewed, may be necessary and even indispensable, but they do not enter into any structure so as to be a part of its materials, and cannot be regarded as within the provision of the statute by which a lien is given in certain cases to the laborer and the material man."

The reasoning of the foregoing quotation is as applicable to the moulds for the concrete of the building here involved as the moulds for the hewing of timbers for the ship in that case.

The decree of the Superior Court being without error is affirmed.

*Affirmed.*