(86 Misc. Rep. 300)

### POST & McCORD v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County.   June 25, 1914.)

1. CORPORATIONS (§ 405*)—OFFICERS—CONDUCT OF BUSINESS.

A contract of partnership made by a corporation is ultra vires, and hence the president of a corporation cannot bind it to such a contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1603; Dec. Dig. § 405.*]

2. PARTNERSHIP (§ 6*)—WHAT CONSTITUTES.

While sharing in the profits is the most important element of a partnership, an agreement, whereby an individual who advanced money to a corporation to enable it to carry out a construction contract was to receive one-third of the profits of the venture, if any, did not create a partnership between him and the corporation, where he had no control over the work, and his only authority over the corporation was that the moneys advanced were put in a joint account which could not be withdrawn. without his consent.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 17–19; Dec. Dig. § 6.*]

3. MUNICIPAL CORPORATIONS (§ 373*)—CONSTRUCTION CONTRACTS—LIENS—ASSIGNMENTS.

In an action to determine whether the assignment to defendant of moneys due a corporation from a municipality was inferior to plaintiff's lien, evidence *held* insufficient to sustain plaintiff's claim that defendant's servant, who was a stockholder and director of the corporation, was a mere dummy for defendant.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

4. MUNICIPAL CORPORATIONS (§ 373*)—CONSTRUCTION CONTRACTS—LIENS—ASSIGNMENTS.

Under the Lien Law (Consol. Laws, c. 33), a public contractor has the right to assign moneys to become due to him under the contract, and, if the assignee files his assignment, he obtains a preference over subsequent lienors.

[Ed. Note.—For other cases, see Municipal Corporations, Cent..Dig. § 913; Dec. Dig. § 373.*]

5. MUNICIPAL CORPORATIONS (§ 373*)—CONSTRUCTION CONTRACTS—LIENS—ASSIGNMENTS.

An assignment by a public contractor of moneys to become due him under the contract is not invalid, because based on a past consideration; any valid consideration being sufficient to support it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

6. MUNICIPAL CORPORATIONS (§ 373*)—CONSTRUCTION CONTRACTS—LIENS—ASSIGNMENTS.

That an assignment by a public contractor of moneys to become due him under the contract will prefer the assignee does not render the assignment invalid; such being the very purpose of most assignments.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

7. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS.

A lien notice, whereby a creditor of a public contractor sought to obtain a lien upon moneys due the contractor by a municipality, is insufficient, where it merely stated that the lienor's work was performed June 20th, such statement not showing when the amount claimed became due; for, while under a contract which is silent as to the time of payment, payment is due when the work is completed, no inference can be drawn that the contract under which the lienor performed work and which was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not incorporated in the notice contained no provision fixing time of payment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

8. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS.

Under Lien Law (Consol. Laws, c. 33) § 12, applicable to liens upon sums due public contractors, and providing that if the lienor is a partnership or corporation notice shall state the business address of such partnership or corporation, a lien notice by a partnership is not bad because not stating the residence of the copartners; the partnership being treated as an entity as are corporations.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*].

9. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS.

Lumber furnished to make forms for concrete, which was broken up and removed as firewood after it had been used, constitutes materials, and hence may be the subject-matter of a lien upon the proceeds due the contractor on public work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

10. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS.

Where a lienor furnished men and teams to haul materials used by a public contractor and the materials were actually carried and hoisted by the men and teams, the lienor furnished labor and was entitled to a lien therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

Suit by Post & McCord against the City of New York and others and the Vulcan Rail & Construction Company, which counterclaimed. Decree dismissing the last-named defendant's counterclaim and holding that the liens and assignments of the other defendants were superior to the lien of plaintiff.

Eidlitz & Hulse, of New York City (D. Cady Herrick, of Albany, and William W. Robison, of New York City, of counsel), for plaintiff.

Frank L. Polk, Corp. Counsel, of New York City (John L. O'Brien, of New York City, of counsel), for defendant City of New York.

George P. Heimberger, of New York City (Selig Edelman, of New York City, of counsel), for defendant New York State Const. Co.

Franklin H. Mills, of New York City, for defendant Coal & Iron Nat. Bank.

Strasbourger, Eschwege & Schallek, of New York City (Max L. Schallek and Samuel Strasbourger, both of New York City, of counsel), for defendants Sax, Creighton, and Thompson & Sons.

Sutro & Wright, of New York City (Boardman Wright, of New York City, of counsel), for defendant Electric Construction & Supply Co.

Wilber, Norman & Kahn, of New York City (Mark W. Norman and Louis L. Kahn, both of New York City, of counsel), for defendant Vulcan Rail & Construction Co.

Moen & Dwight, of New York City (William Bell Wait, of New York City, of counsel), for defendant Smythe.

Holt, Warner & Gaillard, of New York City (William D. Gaillard, of New York City, of counsel), for defendant Joseph Johnson's Sons.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LEHMAN, J.   The plaintiff herein has performed work for the defendant New York State Construction Company under a contract for a public improvement.   On or about April 8, 1913, the plaintiff filed a notice of lien for the moneys to become due under its contract, but it allowed this lien to lapse on July 8th.   Thereafter it filed the notice of the lien which it now seeks to foreclose.   In the meanwhile, several other lienors had filed notices of lien, and the defendants Alfred R. Sax and Coal & Iron National Bank had filed several assignments of money ·to become due under the contract made by the city· with the State Construction Company.   These liens and assignments are prior to the principal lien of the plaintiff, and the main issues litigated concern the validity of these liens and especially of these assignments.

These assignments now all belong to Alfred R. Sax and, with the exception of the assignment to the Coal & Iron Bank, were given to Sax or to his bookkeeper Creighton to secure Sax for moneys advanced at the time of the taking of the assignments or shortly prior thereto or for indorsements of notes.   The assignments to the Coal & Iron Bank were taken by the bank at Sax's suggestion to secure a prior indebtedness guaranteed by Sax and which Sax subsequently paid.   While, possibly, the fact that they were given to secure an indebtedness to the bank, instead of to Sax, might make these assignments valid, even if the assignments made to secure direct indebtedness to Sax were fraudulent in law, yet, as I believe that even the direct assignments to Sax are valid, I have not considered it necessary to consider this question.

It appears that, at the time when the State Construction Company took the contract with the city, it realized that it would require the sum of about $10,000, and the defendant Sax agreed to advance such sum. He testifies that at that time the president of the company stated, "If it comes out all right, I will give you 33⅓ per cent. of the profits." The president testifies that he said, "If the job panned out all right and I made money, I would give him one-third of the profits."   Sax also agreed at the time that he would become an indemnitor on the company's bond; but, to protect himself on his indemnity, he arranged that the bank account should be kept as a joint account subject to his countersignature.   No formal agreement that Sax should have any share of the profits was ever entered into, and no resolution to that effect ever entered on the minutes of the corporation.

[1, 2]   It is urged that the promise ·of an interest in the profits constituted Sax a partner in the venture.   A copartnership contract made by a corporation is, of course, ultra vires, and certainly there is no implied power in the president to bind the corporation to such a promise. Nevertheless, where such a contract, even though invalid as between the parties, is actually carried out, it may be that the relationship would cause a liability as to third parties exactly as if there had been a valid partnership.   I do not, however, in this case, find that the relationship of partners, even as to third parties, ever existed.   It is well established that a right to share in the profits is the "most important element" to be considered in determining whether a contract between two parties

constitutes them partners; "but that element is not conclusive and controlling. * * * When one is only interested in the profits as compensation for services rendered or money advanced, he is not a partner." Larzelere v. Taber, 119 App. Div. 81, 103 N. Y. Supp. 970. In this case, I think that Sax clearly had no proprietary interest either in the venture or the expected profits. He was neither required nor entitled to direct the work in any way except that he had a right to countersign the checks to prevent a diversion of the funds. His right to share in the business was limited to a share in the profits only if and when such profits might be realized and then depended rather on a moral than a legal obligation to pay such profits as compensation for moneys advanced. He was never held out as a partner and took no active part in the work. He never intended to assume any liability towards creditors, he was not a joint owner of the contract, and I do not think that under these circumstances the law imposes upon him such a liability.

[3] The plaintiff further claims that the assignments are invalid as constituting an unlawful preference made to an officer or stockholder after insolvency. While the evidence of insolvency is somewhat unsatisfactory, I think, it is sufficient to sustain such a finding; but I cannot find that Sax was either an officer or stockholder. He was certainly neither an officer nor a stockholder of record; but one of his employés was an officer and stockholder, and it is claimed that this employé was only Sax's dummy. The only direct evidence that this employé Knolle was Sax's dummy is the testimony of plaintiff's contracting manager that Sax stated to him:

"I have my man in there drawing a salary. I think I might just as well get part of it as anybody else."

Sax denies this statement, and, in view of the fact that the only reason why Knolle should be the dummy for Sax would be to conceal Sax's interest, I think it is very improbable that he should have volunteered such a statement to the principal creditor of the corporation. I have therefore reached the conclusion that the witness' memory is at fault in regard to the exact words of the conversation. The other evidence on this point is purely circumstantial, and I am asked to draw an inference that Knolle is Sax's dummy from the fact that Knolle was in Sax's general employment, that he obtained his stock on extremely favorable terms, that he indorsed the certificate of stock in blank, that the certificate was brought to court by Sax at Knolle's alleged request, and that Knolle's explanation of these matters is not convincing. Knolle expressly and emphatically alleges that he was the actual owner of the stock, and, after careful consideration, I have found that the circumstantial evidence is too slight to outweigh his direct testimony and explanation.

[4-6] The plaintiff further claims that these assignments are void in so far as they were given to secure prior indebtedness. It seems now well established that a contractor has a right under the Lien Law to assign moneys to become due under a contract to a creditor, and that, if such creditor files the assignment properly, he obtains a preference over subsequent lienors. Bates v. Salt Springs National

Bank, 157 N. Y. 322, 51 N. E. 1033. The statute does not require that the assignment must be given for a present consideration, provided it is given for a valid consideration. Nor is such an assignment vitiated by the fact that it is given with intent to prefer a particular creditor; in fact, the very purpose of giving the assignment is usually to create a preference. The plaintiff relies for authority upon the cases of John P. Kane Co. v. Kinney, 174 N. Y. 69, 66 N. E. 619, and American Mortgage Co. v. Merrick Construction Co., 120 App. Div. 150, 104 N. Y. Supp. 900, affirmed 190 N. Y. 526, 83 N. E. 1122; but these cases hold only that a general assignment for the benefit of subcontractors does not take precedence over subsequent liens. These cases, I think, rest upon the principle that the general assignee or the trustee represents only the assignor and his creditors, and that the assignor cannot by voluntary act deprive any individual creditor, against his will, of the right by superior diligence to obtain a preference. These cases do not, however, decide that the contractor cannot, by assignment, place an individual creditor in a position where under the statute he can obtain a preference over other creditors. It follows that the assignments made by the contractor are superior to the plaintiff's lien filed thereafter.

[7] The plaintiff also urges that some of the liens claimed by the defendants are invalid. The first objection raised is a technical objection that the notice of lien filed by the Vulcan Rail & Construction Company fails to state when the amount claimed became due, as required by the statute. I am unable to agree with the contention of the lienor that this appears by fair inference from the statement contained in the notice of lien that the work was performed on June 20th. It is true that the rule is well recognized that, where a contract is silent as to the time of payment, the payment is due when the work is completed; but I know of no inference that can be fairly drawn that a building contract not incorporated in the notice of lien is silent on this point. Though absolutely no harm is done to any party by the failure of the notice of lien to contain such a statement, yet, since the statute requires the statement, the notice would seem to be invalid. Mahley v. German Bank, 174 N. Y. 499, 67 N. E. 117; Bradley & Son v. Huber Co., 146 App. Div. 630, 131 N. Y. Supp. 388.

[8] The plaintiff further claims that the liens of the defendants James Thompson & Sons and Joseph Johnson's Sons are invalid because they fail to state the residence of the lienors and because they contain items which are not the subject of a mechanic's lien. Both these liens are filed by copartnerships, and both contain the business address of the copartnership. It seems to me that the provision contained in section 12 of the Lien Law that, "if the lienor is a partnership or a corporation, the notice shall state the business address of such partnership or corporation," is intended to be in substitution for and not in addition to the previous clause requiring a statement of the residence of the lienor. A corporation certainly is an entity having no residence other than its principal place of business, and, though a partnership is not strictly speaking an entity apart from its members, I think that for the purposes of the Lien Law it may be so regarded. In arriving at this construction, I do not now attempt to pass upon the

requirements of the statute regarding private liens (section 9 of the Lien Law) which differs from section 12 of the Lien Law in the possibly material point that the requirement, that the business address be stated, is joined to the requirement, that the residence of the lienor be stated, by the word "and" and is part of the same sentence.

[9] The question, however, whether these notices of lien refer to labor and materials which are the proper subject of a lien is one of more difficulty. Thompson & Sons claim a lien for lumber furnished for forms, boarding, and furring to hold the concrete until it hardened. After the lumber had been used for this purpose, it was broken up and removed by Italians as firewood. The question therefore is presented whether this lumber constitutes materials or only an instrumentality used in the construction. The only case that I have been able to find in which this question was seriously considered is that of Barker & Stewart Lumber Co. v. Marathon Paper Mills, 146 Wis. 12, 130 N. W. 866, 36 L. R. A. (N. S.) 875. In that case, it was held that lumber used for the construction of a cofferdam, and which was in effect destroyed by such use, is the lawful subject of a mechanic's lien. While the Court of Appeals of our state, in Schultz v. Quereau Co., 210 N. Y. 257, at page 261, 104 N. E. 621, quoted with approval some of the language of the opinion in the Wisconsin case, it refused to express any opinion concerning the actual decision, and the question must therefore be considered an open one in this state. It is true that in the case of Builders' Material Co. v. Johnson, 158 Ill. App. 411, cited with approval in Troy Public Works Co. v. City of Yonkers, 207 N. Y. 81, 100 N. E. 700, 44 L. R. A. (N. S.) 311, the question presented was somewhat similar, and the court found that lumber used for making forms for concrete, of which the interior walls were constructed, was not the subject of a mechanic's lien; but the opinion of the court fails to show whether the forms were used for the making of the blocks outside of the building or were part of the construction removed after the walls had set in place; nor is there any statement that the lumber was thereafter valueless. The Court of Appeals, in the case of Troy Public Works Co. v. City of Yonkers, supra, 207 N. Y. at page 85, 100 N. E. 701, 44 L. R. A. (N. S.) 311, quotes the case only as holding that "where the wooden molds for concrete blocks were returned to the owner after the completion of the work" they are not the subject of a lien. In the case of Schagticoke Powder Co. v. G. & J. Railway Co., 183 N. Y. 306, 76 N. E. 153, 2 L. R. A. (N. S.) 288, 111 Am. St. Rep. 751, 5 Ann. Cas. 443, the court held that dynamite used in excavating ground was "materials" within the meaning of the law. In that case, the opinion of the court, per Werner, J., states that:

"Lumber may be used in the construction of a building for the purpose of scaffolding. However, it does not thereby literally enter into the composition of the building, nor, so to speak, become a part of it. But, in my judgment, both it and the water (used for mortar) 'have been used' in the construction of the building and mason work, within the meaning of the Lien Law, and the purposes for which it was enacted."

If this dictum represents the law, then a fortiori lumber directly applied to the concrete in the building and thereby rendered worthless is

also used in the construction of the building. The true rule is pointed out in the case of Schultz v. Quereau Co., supra. The test seems to be whether the materials entered directly into the construction or were only used as an instrumentality of the construction. In this case, the lumber itself was actually applied to the structure and became a temporary part thereof, and, while such a part, it became worthless, and in that sense lost its identity as lumber. Under these circumstances, it in my opinion, should be considered as materials used in the construction, and not a tool or appliance used for the construction.

[10] The lien of Joseph Johnson's Sons is for labor and materials. The materials are concededly the subject of a lawful lien within the statute; but the plaintiff contends that the so-called labor is not the proper subject of a lien within the rule as laid down in the cases of Troy Public Works Co. v. City of Yonkers, supra, and Schultz v. Quereau Co., supra. This lien itemizes the labor and shows that a considerable portion thereof is for hire of teams and horses, hire of hoisting machine with horse and driver, and ferriage to the place of work. It is quite true that, if the lienor had merely furnished these instrumentalities to the contractor, he could not file a lien for their hire, for they would not constitute materials within the meaning of the statute, and the mere hiring of instrumentalities does not constitute labor. It appears, however, that in this case each wagon and the hoisting machine were furnished with a horse and man, and the lienor actually performed the labor of hoisting and trucking. He is entitled to a lien for the value of the labor so performed, and this value is merely increased by the instrumentalities used in this labor.

I find that the plaintiff's principal lien is subordinate to the liens and assignments of the defendants named, except the lien claimed by the defendant Vulcan Rail & Construction Company; and I also find that the counterclaim of the defendant State Construction Company should be dismissed. Findings passed upon. Submit decision and decree.