DELAWARE RIVER QUARRY AND CONSTRUCTION COMPANY

*v.*

THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MERCER et al.

[Submitted November 7th, 1917.    Decided January 15th, 1918.]

1. The furnishing of automobile trucks and drivers to a contractor does not give a claim for "labor" within the terms of the Municipal Mechanics' Lien law. They are mere instrumentalities.

2. The act gives a lien only to subcontractors and persons who labor for, or furnish material to, the contractor or subcontractor.

CASES IN CHANCERY, 1917–1918. 507

*88 N. J. Eq.*      Del. River Q. & C. Co. *v.* Mercer Freeholders.

3. The provision of the act that a notice of lien should state the "terms, time given, conditions" of the contract, is not applicable to cases of simple contract of purchase on orders from day to day. *Agnew v. Paterson Board of Education, 83 N. J. Eq. 49,* followed.

4. A notice of pendency of suit served on the day the bill was filed is sufficient, although subpœnas were not actually issued until four days later.

On bill, &c.

*Mr. Scott Scammell* and *Mr. Charles De F. Besore,* for the complainant.

*Mr. Harry Heher,* for the defendant trustee in bankruptcy.

*Mr. Alvin W. Sykes* and *Messrs. Church & Harrison,* for the defendant Holbrook Cabot & Rollins Corporation.

BACKES, V. C.

This bill is to enforce municipal mechanics' liens. *Comp. Stat. p. 3315.* The Newton Paving Company paved Nottingham Way under contract with the board of freeholders of Mercer county. The lienors, Delaware River Quarry and Construction Company, furnished material and the Holbrook Cabot & Rollins Corporation claims to have performed labor in the execution of the contract. The Newton company has been declared a bankrupt and the trustee in bankruptcy resists the claims to liens; the Holbrook corporation because its debt is not protected by the act and both claims on the common ground that the lienors failed to perfect their liens in the manner prescribed by the statute. Section 1 gives a lien to any person who shall in conformity with the terms of any contract for any public improvement, made between any person and any municipality, perform any labor or furnish any material towards the performance or completion of any such contract, on complying with the provisions of the act. Section 2 prescribes the manner of giving notice of liens and defines what it shall contain, among which is that the claimant shall state "the terms, time given, conditions of his contract." Section 4 provides that the lien shall not be binding unless within ninety days from the filing of the same action be com-

menced and notice of the pendency of the suit be filed with the financial officer of the municipality. Other features of· the act need not be mentioned.

1. The Holbrook corporation hired automobile trucks with drivers, which were used by the contractor in hauling material from its plant to the work. During the operation the trucks and drivers were under the exclusive management and control of the latter. The claimant had no hand in the work, nor did it undertake to perform any part of the contract. The furnishing of instrumentalities to a contractor and used by him in the performance of a contract, does not constitute "labor" within the scope and purview of the statute. *Troy Public Works Co.* v. *City of Yonkers, 207 N. Y. 81; Post & McCord* v. *City of New York, 148 N. Y. Supp. 568; affirmed, 152 N. Y. Supp. 1138.* But counsel contends that having furnished drivers to operate the auto trucks the claimant performed labor, arguing that the trucks were merely incidental to the labor of the drivers, and citing *Post & McCord* v. *City of New York.* That case does not support the· position taken. There the claimant, Johnsons, labored with wagons and drivers. Here the contractor did the work with claimant's trucks and drivers. The undertaking of Holbrook corporation did not involve the performance of any part of the municipal contract. It was in no sense a sub-contractor. Its drivers, like the trucks, were instrumentalities furnished to the contractor. There is a marked distinction between a charge for rental of instrumentalities used by the contractor and a claim for labor performed by the lienor by means of instrumentalities. In the latter instance, as remarked in the last-cited case, the claimant "is entitled to a lien for the value of the labor so performed and this value is merely increased by the instrumentalities used in this labor." The nature of the engagement is the controlling element.

The view strenuously urged by the trustee that only those who personally labor are within the protection of the statute, is too narrow, and the cases cited are not authority for the proposition. *Tod* v. *Kentucky Union Railway Co., 52 Fed. Rep. 241; Vane* v. *Newcombe, 132 U. S. 220; State* v. *Rusk, 55 Wis. 465; Adams* v. *Goodrich, 55 Ga. 233; Lehigh Coal and Navigation Co.* v.

*Central Railroad of New Jersey, 29 N. J. Eq. 252; Little Rock
II. S. & T. R. R. Co.* v. *Spencer & Maney, 65 Ark. 183.* It seems
to me that had the claimant contracted to carry the material
from the contractor's plant to the work by means of its trucks
and drivers, there could be no doubt that its claim would have
been within the provisions of the act. The language of the
statute in this respect is broad and comprehensive and the legis-
lative intent manifestly was to afford protection to all, within
the statutory category, who contribute labor towards the perform-
ance of public contracts, whether it be rendered personally or
through agencies. *Davis* v. *Mial, 86 N. J. Law 167.* In this
connection it is to be observed that the act is not inclusive of all
labor, even though it be manual and personal, but extends to such
only as is engaged by the contractor or sub-contractor, and it
would therefore appear that the drivers of the claimant would
not have been entitled to liens, although admittedly they per-
formed labor towards the completion of the contract.

2. The attack upon the claim of the Delaware River Quarry
and Construction Company is purely technical and is twofold—
*first,* because the notice of liens does not state the "terms, time
given, conditions" of its contract, and *secondly,* because of a de-
fect in the service of the notice of the pendency of the suit. The
claim is for the price of various sizes of crushed stone, furnished
from time to time on request, subject to a previous quotation of
prices which stipulated that "settlement for stone to be made on
the 15th of each month for all stone shipped in the previous
month." The quotation was general, applying to all shipments,
and was not made with special reference to the purchases for
Nottingham Way, the stone for which was delivered at the con-
tractor's plant where some of it was made up into paving ma-
terial and all carted to the work and used. The debt is admitted
and it is conceded to be the appropriate subject of a lien. The
notice of lien is perfected save for the omission of meaningless
and utterly useless statement of "terms, time given, conditions"
of the contract, and to invalidate it for this harmless non-com-
pliance has not been the inclination of our courts. The New
York courts have held lienors to a strict compliance with their
mechanics' lien acts and have rejected claims for failure to state

in the notice when the first item of work was done, although, as remarked by the judge writing the opinion for the court of appeals, "the particular advantage or object of requiring this fact to be stated is not readily apparent." *Mahley* v. *German Bank, 174 N. Y. 499.* In *Bradley* v. *Huber Company, 131 N. Y. Supp. 388,* and in *Post & McCord* v. *City of New York, supra,* liens were disallowed because the notices failed to state when the debt became due; "though," as the court observed, "absolutely no harm is done to any party by the failure of the notice of lien to contain such a statement." And it may be that if the claim under consideration were one to which this wholly irrelevant provision of our statute applied conclusively, I would be constrained to follow the rule of construction adopted in those cases and for the reason there given that the statute had expressly required it. But our courts have decided that the statement is not required in cases of simple contracts of purchase on orders from day to day. In *Agnew Company* v. *Paterson Board of Education, 83 N. J. Eq. 49; affirmed, 83 N. J. Eq. 339,* the situation was similar in all respects to the present, with a single exception, to which I will immediately allude. Vice-Chancellor Stevenson in overruling the objection to the notice of lien that it was imperfect because of failure to state the terms, &c., says: "I think there are grounds for holding that the statute did not intend to require a claimant, perhaps a business man acting for himself when drawing a notice of lien, to spell out accurately the exact legal contract into which he entered, by means of letters and conversations, and under which his material was furnished," and on *p. 61* of his opinion he says that "rather than to adopt a construction of this Municipal Improvements Lien act, which would render a notice of lien like that of the John Agnew Company inoperative, because of a purely technical objection like the one made in this case, the view might be adopted that the phraseology of the statute, 'a statement of the terms, time given, condition of his contract,' refers only to cases where the labor has been done or the materials have been furnished in pursuance of a written contract, or at least a definite and complete oral contract altogether different from the implied contracts under which labor and materials are generally furnished, which implied contracts

embrace and adopt any definite matters which may have been agreed upon by letters, or otherwise, such as a scale of prices." The only thing in this case, which was absent there, is, that accompanying the quotation of prices, periods for settlements were fixed, but this additional and incidental feature of the quotation, evidently for the convenience of trade, even though it be regarded as stating terms or giving time, does not distinguish the contract so as to include it within the requirements of the statute, and for the reason pointed out by the learned vice-chancellor that there was no definite and complete contract between the lienor and the contractor, on the part of the one to furnish and the other to purchase the material, the terms whereof were to be stated.

The objection that notice of the pendency of the suit was prematurely given cannot prevail. The bill was filed on January 20th, 1917, and on the same day notice of the suit was served upon the proper financial officer of the county. Subpœnas were not issued and served until four days later, but all was done within ninety days of the filing of the lien. Suits in chancery are commenced by the issuance and service of subpœna or the making of a *bona fide* attempt to serve it after the bill has been filed (*Haughwout* v. *Murphy, 22 N. J. Eq. 531; Hermann* v. *Mexican Petroleum Corporation, 85 N. J. Eq. 367; Haupt Company* v. *Board of Education of Edgewater, 100 Atl. Rep. 337*) ; and a notice filed under the *Lis Pendens* act (*Comp. Stat. p. 3175*) before the action is thus commenced, is ineffectual, as suits in equity were before the act was passed; innocent purchasers being charged with constructive notice of the pendency of the suit only by the filing of the bill and the service of the subpœna. A reason for this rule of practice may be found in the hardship imposed on innocent third parties by the doctrine of *lis pendens,* but no such reason can be advanced for its application to the Municipal Mechanics' Lien act where no innocent parties are involved. Here the notice is actual, not constructive, and it serves an entirely different purpose. The financial officer must keep the fund intact for ninety days after the lien is filed, during which time the action must be commenced and the officer notified

of its commencement, so as to further impound the fund to abide the decree.    While at the time of the service of the notice this suit was not technically commenced, the first step in the proceedings had actually been taken; the bill was on file, and in the popular sense, at least, the action had been begun.    The bill and notice of suit furnished the financial officer with all of the information the statute intended should be conveyed to him.    Our files would not have disclosed more had process been taken out, and, besides, with these subsequent proceedings, the official at that time had no concern.    The notice was not invalid, but was merely inoperative and came into full force and effect on the issuing of subpœnas and their service or attempted service within the time allowed for the bringing of the suit.    In *Tate* v. *Jordan, 3 Abb. Pr. 392,* the complaint and notice of pendency of the action were filed on May 10th, 1856, but the summons was not served on any defendant until May 21st following. Objection was made to the validity of the *lis pendens* notice on the ground that no action was pending when it was filed, and the court held that the notice was not a nullity but was merely ineffectual until service of the subpœna, and then became effective. The text in *Cyc.* is that "the notice of the pendency of the action may be filed before the summons is served.    It does not become operative except where the statute otherwise provides, until service of the summons."    *25 Cyc. 1467.*    See, also, *Benn. Lis Pend. 376; Waring* v. *Waring, 7 Abb. Pr. 472; Benson* v. *Sayre, 7 Abb. Pr. \*472.*    All of the practical and legally essential requirements of the act having been substantially complied with and within the time limited, the complainant will be awarded the amount of its lien.

The complainant's bill to enforce another lien for materials furnished to the same contractor for the paving of the River road, in Mercer county, is controlled by the foregoing and will be allowed.    The complainant is entitled to costs.