**CITY OF NEW YORK and the Industrial Commissioner of the State of New York, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 29, Docket 26098.**

United States Court of Appeals
Second Circuit.

Argued Sept. 27, 1960.

Decided Oct. 31, 1960.

Cornelius F. Roche, New York City (Charles H. Tenney, Corporation Counsel, New York City, Stanley Buchsbaum, Brooklyn, N. Y., of counsel, on the brief), for appellant City of New York.

Samuel Stern, New York City (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Paxton Blair, Sol. Gen., Albany, and Leonard H. Rossen, Junior Atty., New York City, on the brief), for appellant Industrial Commissioner of State of New York.

Douglas A. Kahn, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Department of Justice, Washington, D. C., on the brief), for appellee.

Before LUMBARD, Chief Judge, and TUTTLE* and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

This case is before us on appeal from an order entered by the District Court for the Eastern District of New York, confirming the order of a referee in bankruptcy granting lien status under § 67, sub. b of the Bankruptcy Act, 11 U.S. C.A. § 107, sub. b to certain claims of the United States for tax deficiencies. An involuntary petition in bankruptcy had been filed against the Moderneer Footwear Co. on February 26, 1958, by creditors claiming for unpaid wages and severance pay, and the company was subsequently declared a bankrupt and a trustee appointed.

* Sitting by designation.

Within four months prior to the filing of the petition, a general assignment for the benefit of creditors made by the bankrupt fourteen days earlier was perfected by filing the assignment with the New York Supreme Court of Kings County, under New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 3. Subsequent to such assignment, on November 22, 1957, the United States assessed tax deficiencies against the company in the amount of $4,826.64, for Federal Insurance Contributions Act, 26 U.S.C.A. § 3101 et seq. and withholding taxes due for the third quarter of 1957. This claim was in addition to an earlier assessment by the United States made on October 8, 1957, for $2,067.53 plus interest, due for FICA and withholding taxes for the second quarter of 1957. On the very date on which the bankruptcy petition was filed, the federal government made a third assessment in the amount of $277.39 for Federal Unemployment Tax Act, 26 U.S.C.A. §§ 3301–3308 obligations, and finally, on December 19, 1958, it assessed an additional $834.21 as a further tax deficiency. The United States now seeks to have all but the last of these claims granted lien status under § 67, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. b, which upholds the validity of "statutory liens for taxes and debts owing to the United States * * * created or recognized by the laws of the United States or of any state * * * even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this title by or against him." The United States' claim is opposed by the New York State Industrial Commissioner and the City of New York, each of which have filed tax claims in the bankruptcy proceedings.[1]

The United States' contention that a lien had been perfected prior to the bankruptcy proceedings is based on § 6321 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6321, the relevant portion of which reads as follows:

"§ 6321. Lien for Taxes.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

■ Under § 6322, 26 U.S.C.A. § 6322, the lien arises at the time the assessment is made. As of that moment, therefore, if there exist property or rights to property "belonging" to the debtor, the lien will attach. In determining the nature and extent of the debtor's ownership, however, we are remitted to state law since § 6321 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." United States v. Bess, 1958, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 12 L.Ed.2d 1135; see Aquilino v. United States, 1960, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365; United States v. Durham Lumber Co., 1960, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371; Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 2 Cir., 1957, 241 F.2d 142.

■■ Under long-standing New York decisional law, an assignee for the benefit of creditors takes title to the debtor's estate and holds as trustee for all the creditors. Brown v. Guthrie, 1888, 110 N.Y. 435, 18 N.E. 254; Brennan v. Willson, 1877, 71 N.Y. 502. The court supervises the trustee and orders distribution of the settled estate to the creditors, N.Y. Debtor and Creditor Law, §§ 8, 15, 20, so that the estate is said to be *in custodia legis*. In Matter of John C. Creveling & Son Corp., 259 App.Div. 351, 353, 19 N.Y.S.2d 378, affirmed, 1940, 283 N.Y. 760, 28 N.E.2d 975; Florence Trading Corp. v. Rosenberg, 2 Cir., 1942, 128 F.2d 557. All that the assignor owns after his as-

1. The state claims $910.12 for unemployment insurance contributions and $25 for a corporate franchise tax. The city's claim is for sales and business taxes in the amount of $747.82.

signment is completed is the right to have refunded to him whatever remains after the creditors have been satisfied. Mills v. Husson, 1893, 140 N.Y. 99, 35 N. E. 422.

 The § 6321 lien attaches only to the extent of the taxpayer's property interest, United States v. Burgo, 3 Cir., 1949, 175 F.2d 196, and is not a proper basis for a levy on contingent rights before they come into being. United States v. Long Island Drug Co., 2 Cir., 1940, 115 F.2d 983. Thus, the property, after it had been assigned by the taxpayer, could not be subjected to the government's lien. Nor is the fact that some New York decisions have upheld the validity of a mechanic's lien filed after a general assignment any support for the proposition that the federal government's lien is valid on the facts before us. A case such as John P. Kane Co. v. Kinney, 1903, 174 N.Y. 69, 66 N.E. 619, indicates merely that the New York courts have recognized a "preferential statutory right, in the nature of an unperfected equitable lien, in favor of the laborer, mechanic, materialman, or subcontractor." Id., 174 N.Y. at page 73, 66 N.E. at page 619. Whatever policy reasons impel the New York courts to impress such a security interest on the debtor's estate even before the creditor satisfies the statutory prerequisites [2] are not binding on this court or apposite when it is not a laborer but the federal government which is pressing its claim. In none of the mechanics' lien cases [3] do the New York courts base their decision upholding the lien on an assertion that the assignor retained property rights after his general assignment had been perfected. Since it is only if such rights still belong to him that § 6321 impresses

a lien on the taxpayer's realty or personalty, the general assignment barred a subsequent tax lien.

The United States, however, contends that § 70, sub. a(8) of the Bankruptcy Act governs, despite local property law, once a petition in bankruptcy is filed. That subsection, now 11 U.S.C.A. § 110, sub. a(8), reads, in relevant portion, as follows:

"The trustee of the estate of a bankrupt * * * upon his * * * appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title * * * to all of the following kinds of property wherever located * * * (8) property held by an assignee for the benefit of creditors appointed under an assignment which constituted an act of bankruptcy, which property shall, for the purposes of this title, be deemed to be held by the assignee as the agent of the bankrupt and shall be subject to the summary jurisdiction of the court."

The United States maintains that since the present assignment was made within four months of bankruptcy it constituted an act of bankruptcy within § 3, sub. a(4) and § 3, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 21, subs. a(4), b, so that upon filing of the petition the title residing in the assignee by virtue of the states' debtor-and-creditor law was extinguished by the federal bankruptcy statute, and he held the property as a "naked bailee" for the bankrupt. Therefore, the federal government continues, the lien attached when the deficiency was

---

**2.** This policy, apparently founded on a desire to ensure that formalities would not defeat the rights of laborers and materialmen, whose claims sound in unjust enrichment, extends even to bankruptcy and validates a mechanic's lien filed after a bankruptcy petition. Gates & Co. v. John F. Stevens Construction Co., 1917, 220 N.Y. 38, 115 N.E. 22. Since a tax assessment which postdates bankruptcy

would not give rise to a statutory lien under the Internal Revenue Code, the federal claim is obviously distinguishable from the laborer's.

**3.** E.g., Post & McCord v. City of New York, 1914, 86 Misc. 300, 148 N.Y.S. 568, affirmed 1915, 166 App.Div. 919, 152 N.Y. S. 1138; Matter of Marstan Plumbing Co., 1941, 176 Misc. 956, 28 N.Y.S.2d 190.

assessed against the corporate taxpayer since the property then "belonged" to the corporation and was held in the custody of its agent.

■ If we could find a legitimate bankruptcy policy that is furthered by such a construction of § 70, sub. a(8), it might not be enough to say merely that the language of the statute gives no retroactive effect to this incursion on local property law; it directs that the property shall "be deemed to be held by the assignee as the agent of the bankrupt," not that it should "be deemed to *have been* held by the assignee" as an agent. However, there is no reason to suppose that Congress intended retroactively to alter the situs of title to property generally assigned for creditors. The legislative history of the present § 70, sub. a(8) indicates that it was meant to be declaratory of existing law and merely to facilitate the summary jurisdiction of the bankruptcy court under § 2, sub. a(21), 11 U.S.C.A. § 11, sub. a(21) to require assignees to deliver property in their possession to the trustees in bankruptcy. See H.R.Rep. No. 1409, 75th Cong., 1st Sess. 34 (1937); Shor v. McGregor, 5 Cir., 1939, 108 F.2d 421; 1 Collier, Bankruptcy para. 2.78; 4 id. para. 70.38. Thus, it makes good sense to have title to the assigned estate revert to the bankrupt at the time when the petition in bankruptcy is filed, though not before, in order to prevent the assignee from maintaining that he is an adverse claimant and thus entitled to plenary proceedings. May v. Henderson, 1925, 268 U.S. 111, 115, 45 S.Ct. 456, 69 L.Ed. 870.

Indeed, a contrary rule would throw into confusion the usual procedures whereby a state protects creditors once a general assignment has been made. Since § 67, sub. c(2) of the Bankruptcy Act requires that statutory liens be possessory in order to be valid under § 67, sub. b, the very purpose of a general assignment—that of preserving the debtors' assets and shielding them from levy by the more diligent creditors, see Matter of S. Feldman & Co., 1933, 237 App.Div. 720, 262 N.Y.S. 681—would be undermined were we to accept the United States' contention.[4] If the assignee holds retroactively as a mere agent, it would well behoove a private creditor with a statutory lien to levy upon the estate so assigned and then file a petition in bankruptcy. Under the rule the federal government would have us adopt, § 70, sub. a(8) would uphold a lien accompanied by such a levy if bankruptcy proceedings are begun within four months of the assignment. Thus, the creditor who is dissatisfied with the state's insolvency procedure would not merely get the federal forum to which he is entitled by reason of the Bankruptcy Act, but would also be given, to the extent of his levy, a priority which he is not allowed under state law. Curiously enough, therefore, § 67, sub. b of the Bankruptcy Act, which was intended to preserve only those rights recognized under state law, would, in concert with the proposed construction of § 70, sub. a(8) and § 67, sub. c(2), grant more liberal priorities in the federal courts than would the state under its insolvency proceedings.

■ The government's further contention that § 3466 of the Revised Statutes, 31 U.S.C.A. § 191, gives the United States' tax claim a priority would be persuasive had the bankruptcy petition not been filed. However, the Bankruptcy Act did not incorporate the priority provisions of § 3466 and they do not apply in bankruptcy. Davis v. Pringle, 1925, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974.

---

**4.** Statutes authorizing general assignments for the benefit of creditors have been approved by the Supreme Court as consistent with the policy of the Bankruptcy Act. "[Q]uite in harmony with the purposes of the federal act * * * [statutes] that are regulatory of such voluntary assignments serve to protect creditors against each other, and go to assure equality of distribution * * *." Pobreslo v. Joseph M. Boyd Co., 1933, 287 U.S. 518, 526, 53 S.Ct. 262, 264, 77 L.Ed. 469.

**834**

Reversed with instructions to treat $5,104.03 of the claim of the United States entered on April 10, 1958, plus all claims filed thereafter, as ordinary tax claims under § 64, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(4).